## 42247. ROSS v. THE STATE.
### (334 SE2d 300)

SMITH, Justice.

The appellant, Reginald Warren Ross, was convicted of the murder of Rosetta Threet and the aggravated assault of James Willard Threet. He was sentenced to life in prison for the murder and 20 years to be served consecutively for the aggravated assault. His amended motion for new trial was denied.[1] He enumerates eight errors on appeal and finding none valid, we affirm.

The evidence presented during the trial showed that Mrs. Threet was in possession of some jewelry that she wanted to sell and a friend, Deborah Simpson, suggested that she contact Ross. They met, and he agreed to try to sell the jewelry, which Mrs. Threet said was worth $2,800. Ross gave Mrs. Threet three grams of cocaine. He was to get his payment for the cocaine from the jewelry sale. When Ross could not sell the jewelry he went to a pawn shop where he was told that it was worthless. He went to the Threet's home accompanied by James Johnson to confront Mrs. Threet about being "flim-flammed."

---

[1] The crimes were committed on March 28, 1984. The Fulton County jury returned its verdict of guilty on September 16, 1984. A motion for new trial was filed on October 8, 1984, and it was amended on February 7, 1985. The motion for new trial was heard and denied on February 8, 1985. Notice of appeal was filed March 1, 1985. The record was docketed in this Court on April 17, 1985, and the case was argued June 5, 1985.

Deborah Simpson was there when they arrived. Ross admitted shooting Mr. Threet but denied shooting Mrs. Threet. There were no eyewitnesses to the shooting of Mrs. Threet, and Ross and Mr. Threet gave conflicting testimony regarding the way in which Mr. Threet was shot.

Mr. Threet testified that the men pulled guns, and that James Johnson said, "I came here with him [Ross] and whatever it is that he wants to do in this situation is what we're gonna do. So, you know, if he wants to kill, then we're gonna kill, you know. If he just wants to settle it up another way, we're gonna settle it up another way." Mr. Threet said that he was trying to work out a way to repay Ross when Ross stuck a gun in his back and told him to move. When they left the bedroom, Mrs. Threet was alive. They walked from the bedroom to a hall where Ross said, "Say your prayers, this is for you." Mr. Threet started to turn around, and Ross shot him. Mr. Threet heard four or five shots before he lost consciousness. Ross shot him five times with a .38 caliber weapon.

Ross testified that he grabbed a .38 caliber pistol when Mrs. Threet attempted to reach for it, and he placed it in his trousers. He stated that Mr. Threet later attempted to grab the weapon, and that they were "struggling over the pistol and then it went off. And when the pistol went off, I shot him because I got hold of it." Ross said that he dropped the gun and ran out of the house after he shot Mr. Threet.

Mrs. Threet was found kneeling on the floor next to a bed. Her upper torso was lying across the bed and her hands were behind her neck. She had been shot with a .32 caliber weapon and also with the same .38 caliber weapon that Ross used to shoot Mr. Threet.

A neighbor testified that he heard four or five shots, a pause, two or three more shots, and then he saw a man walk from the Threet's house to a car parked outside. The same man walked back to the Threet's house and reappeared later with another man.

Deborah Simpson testified that when Ross and Johnson came to the Threet's home, Ross threw the jewelry down, claiming it was worthless. She testified that Ross reached for a gun that was in Mrs. Threet's brief case, and Mrs. Threet attempted to grab it away from him. Ross and Johnson then pulled out their own guns. Johnson put his gun to Mrs. Threet's head and said "—, do you believe I will blow your brains out?" Ross told Deborah to leave. She left the house, went to the car that was parked outside, and waited. Approximately 25 minutes later, Ross walked to the car and threw some weapons in the car. He discovered that he had dropped his car keys and he returned to the house. Deborah left the car and attempted to go into the house but she was stopped at the door by Johnson. She asked him if the Threets were dead and he said, "They was through." She left in

the car with Ross and Johnson. As they drove away, Johnson said, "Damn man, you emptied that pistol into that — —, just like that."

Ross and Johnson discussed the crimes, concealing the evidence of the crimes, and what price might be available for the jewelry that was taken from the Threets' house. Ross denied taking the jewelry, but it was found in his house.

1. Although the appellant did not argue the general grounds, we find that the evidence produced at trial was sufficient for any rational trier of fact to find the appellant guilty of the murder of Mrs. Threet and the aggravated assault of Mr. Threet beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant asserts as his first three enumerations of error that the trial court erroneously allowed three witnessses to introduce evidence of his character when he had not chosen to make his character an issue during the trial. He first questions the admissibility of the following portion of Deborah Simpson's testimony: " 'I had to do that.' He said 'because those people knew where I stayed at' and, you know, said it might have endangered his family. And he also said that it wasn't the first time he had done it." Appellant's counsel moved for a mistrial which was overruled. The appellant asserts that his character was again improperly placed into evidence when another witness was allowed to testify that the appellant said that he could get out of the trial by Mr. Threet, "being, you know, put away." Thirdly, the appellant asserts that it was error to overrule his motion for mistrial when on cross-examination, he was asked if he owned a shotgun.

(a) Evidence that is relevant and material to an issue in a case is not rendered inadmissible because the defendant's character is incidentally put in issue. *Baxter v. State*, 254 Ga. 538, 547 (331 SE2d 561) (1985). The testimony regarding the appellant's voluntary admission to Simpson was independently relevant to the question of whether appellant committed the crimes. The fact that he claimed to have committed such crimes before does not render the testimony inadmissible, *Baxter*, supra.

(b) "Evidence of an act by an accused, intended to obstruct justice or avoid punishment for the crime for which he or she is on trial, is admissible if the act constitutes an admission by conduct. [Cits.]" *Smith v. State*, 142 Ga. App. 1, 3 (234 SE2d 816) (1977). We find no error in admitting the voluntary statement of the appellant as it is an admission of his consciousness of guilt by conduct.

(c) During the course of the trial the prosecution and the defense elicited testimony from two witnesses regarding a sawed-off shotgun that was found in the Threet's home, and that was alleged to belong to the appellant. During cross-examination, the prosecution asked the appellant if he owned a shotgun, or a sawed-off shotgun, or if he ever

had a sawed-off shotgun in his possession. He answered negatively to each of the questions. The assistant district attorney's last question was, "On the first of March of 1984, did you have a shotgun with you at that time?" Appellant said, "No, Sir." Counsel for the appellant made a motion for a mistrial asserting that the question about March 1, put appellant's character into evidence. The trial judge said "There is considerable evidence about a sawed-off shotgun that was at the scene of the incident," and overruled the motion. The appellant had already stated that he did not have a shotgun on March 1, and there were no further questions regarding a shotgun. We find appellant's reliance on *Mikle v. State*, 236 Ga. 748 (225 SE2d 275) (1976) unpersuasive. There is no error.

3. The appellant contends that the court erred in denying his motion to suppress a confession that he gave to the police after his arrest.

During a lengthy hearing on the motion to suppress, the appellant did not testify, nor did he present any evidence that he was under the influence of any alcohol or drugs. There was ample evidence to show that the appellant was advised of his rights, that he was in the presence of his mother at the time he read and signed his waiver of rights prior to his confession, that he understood what was going on around him, and that he was not suffering under any disability at that time. During the trial, the appellant raised the issue of intoxication for the first time when he stated that he could not remember all of his confession because he was intoxicated at the time of his statement. We find no error. *Powell v. State*, 252 Ga. 297, 298 (313 SE2d 90) (1984); *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974).

4. The appellant asserts that the court erred in allowing into evidence a handwritten document from "R.R." and the accompanying testimony of Charles Harris.

The prosecution was in the process of proving that the letter was written by the appellant, when he stipulated in open court that the letter was in his handwriting. The recipient of the letter, fellow inmate Charles Harris, testified that he was expecting a letter from the appellant and that he talked with him about the undated letter signed "R.R." after he received it. The letter, which included details of the crimes for which the appellant was charged, requested Harris to call the police and tell them that James Johnson was solely responsible for the crimes. A sufficient foundation was laid to allow the letter into evidence, *Carter v. State*, 252 Ga. 502, 507 (315 SE2d 646) (1984), and we find no error in allowing the letter or the testimony of Charles Harris.

5. The appellant contends that the court erred in charging the jury on armed robbery and conspiracy as they were not presented until the prosecutor's closing argument.

The instructions to the jury should be tailored to the indictment and adjusted to the evidence. *State v. Braddy*, 254 Ga. 366, 368 (330 SE2d 338) (1985). There was evidence of both a conspiracy and an armed robbery.

(a) The jury returned a clear and unambiguous verdict of murder and aggravated assault, written on the indictment, as follows: "We the jury find the defendant guilty of Charge I Murder. We the jury find the defendant guilty of Charge II Aggravated Assault." The jury did not return an ambiguous verdict regarding the murder, and the appellant was not found guilty of armed robbery, thus we find no reversible error.[2]

(b) There was no error in charging the jury on conspiracy. *Anderson v. State*, 153 Ga. App. 401, 403 (265 SE2d 299) (1980).

6. The appellant asserts as error the trial court's refusal to charge the jury on the offense of voluntary manslaughter.

Mrs. Threet's body was found kneeling next to a bed and her hands were behind her head. She had been shot in the back of the neck and head, execution style, with two weapons. There was no evidence that the appellant was acting solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. OCGA § 16-5-2. We find no error.

7. The appellant contends that photographs of the victim and the scene were duplicative, gruesome, and highly inflammatory. We find no error as the pictures were of the crime scene only and in no manner violated the legal principle set out in *Brown v. State*, 253 Ga. 363, 364 (320 SE2d 539) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 26, 1985.

*Donald C. Turner, John R. Greco*, for appellant.

*Lewis R. Slaton, District Attorney, Margaret V. Lines, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General*, for appellee.

---

[2] Charging juries on facts that are not alleged in the indictment can result in ambiguous verdicts that must be set aside. See *Crawford v. State*, 254 Ga. 435 (330 SE2d 567) (1985).