## 76969. TODD v. THE STATE.
(376 SE2d 917)

POPE, Judge.

Appellant was convicted of burglary and now appeals asserting fifteen enumerations of error.

1. Appellant contends that the trial court erred in allowing the State to present, through the testimony of several witnesses, evidence of similar transactions in which appellant was allegedly involved. The basis for appellant's position is the fact that the State did not comply fully with Uniform Superior Court Rule 31.3, 253 Ga. 854 (1985), in notifying appellant of its intent to present the evidence in question. The rule requires that the notice be in writing, served upon defendant's counsel, and state the "transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice." Id., Section (B). The notice that the State provided merely stated that the State "intends to call witnesses . . . to give testimony concerning incidents involving the defendant . . . on the dates of January 1, 1986, June 20, 1986, June 25, 1986, June 30, 1986, July 5, 1986, July 8, 1986, August 11, 1986, and August 18, 1986. . . ." No copies of accusations, indictments, guilty pleas, or verdicts were attached. At the hearing on the issue, the State argued that its notice referenced by implication the indictments against appellant in Madison County, and since appellant was represented by the same counsel in Madison County and they previously had received copies of the indictments, they should have known that those were the transactions the State intended to introduce in the case being tried in Oglethorpe County.

The record also shows that the State gave notice to appellant's counsel of its intent to use similar transactions at a hearing at least six months before trial. The notice provided by the State was served on appellant's counsel 54 days before trial. In argument to the trial court, appellant's counsel cited only the technical violation of the rule, but never indicated any difficulty or harm to his client's defense

because of the State's omission. In *Sweatman v. State*, 181 Ga. App. 474 (1) (352 SE2d 796) (1987), we stated that the purpose of the rule was to provide a criminal defendant adequate notice of the State's intent to use similar transactions to enable the defendant to resolve questions regarding admissibility of such evidence before trial. Moreover, we stated that a violation of the rule must result in prejudice to the defendant. The rule clearly presupposes that the State's failure to comply with the rule will result in harm to the defendant by failing to give him adequate notice of the similar transactions sought to be used by the State. Consequently, non-compliance with the rule puts the burden on the State to prove that its violation of the rule's requirements did not harm the defendant. However, the State can avoid the consequences of its failure to adhere to the rule by showing that the defendant had the requisite notice in spite of the State's failure.

The record here shows that the State carried its burden in this regard. Appellant's counsel represented appellant on the indictments of the similar transactions sought to be used by the State and counsel had copies of the indictments. Appellant had the requisite notice to satisfy the rule's intent. In these circumstances, the trial court's ruling is not harmful error. See *Payne v. State*, 184 Ga. App. 366 (2) (361 SE2d 666) (1987).

2. At the close of the State's evidence, appellant moved for a directed verdict of acquittal, arguing that there was no evidence linking him to the burglary of the victim Mr. Nation's home, because he was not involved in entering the residence, was not present when the residence was entered, and did not have the knowledge that that particular house was to be broken into. The trial court denied the motion, and appellant cites the denial as error.

The State tried appellant for burglary based on his alleged participation as a party to the crime, under OCGA § 16-2-20 (4). That section states that a person may be charged with and convicted of commission of a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." The State's theory of the case is that appellant aided and encouraged the burglary by stating to Kenneth Potts, the actual burglar, what stolen items he would buy (guns and VCRs) because he could readily sell these items. Appellant created a market, thus encouraging Potts to commit the offense of burglary.

The evidence at trial supported this theory. Potts testified that appellant had purchased stolen items from him in the past. According to Potts, "[appellant would] ask about where would they come from, whereabouts, and we'll tell him." The evidence clearly established that appellant knew the items Potts had been selling to him were stolen. Potts testified that "[appellant] said that if we ever had any more guns, that he would buy them, so we — every gun we'd get, we'd take

to him." Thus, the evidence clearly established that appellant knew Potts would steal the guns he supplied to appellant, and would not purchase them at yard sales, as the dissent suggests.

Such evidence is sufficient to convict one as a party to a crime. In *Grant v. State*, 47 Ga. App. 234 (1) (170 SE 394) (1933), this court held that one who counsels and encourages another to commit larceny by promising to buy the fruits of the crime is guilty as a principal even though one does not act as an actual perpetrator of the crime. That the appellant in the case at bar did not specifically select the target of the crime, as was the case in *Grant*, is irrelevant. Appellant clearly counseled and encouraged others to commit burglary to obtain readily marketable goods, specifically guns and VCRs.

Appellant asked Potts where the guns came from. Potts told him that he had "broke into a house in Oglethorpe." Another man, Wayne Kalb, who negotiated the sale of the stolen items to appellant, corroborated Potts' testimony. Potts said that appellant needed to know where the items were taken so he could resell them elsewhere. Appellant purchased the guns knowing they were stolen and after inquiring about the area from which the guns were stolen. Conduct and companionship before and after the crime are circumstances from which the factfinder may infer criminal intent. *Jones v. State*, 242 Ga. 893 (1) (252 SE2d 394) (1979). In the case at bar, the evidence authorized the jury to conclude appellant intentionally encouraged Potts to commit the burglary. Thus, appellant's reliance on *Kilgore v. State*, 251 Ga. 291 (1a) (305 SE2d 82) (1983) is misplaced because in that case there was no evidence of encouragement to commit the crime. The trial court in the case at bar properly denied the motion for directed verdict.

3. Appellant alleges that the trial court erred in denying his motion for mistrial when it allowed a witness who inadvertently violated the sequestration rule to testify. The trial court gave curative instructions in accord with *Jordan v. State*, 247 Ga. 328 (10) (276 SE2d 224) (1981). We find no error. See also *Bradford v. State*, 182 Ga. App. 337 (6) (355 SE2d 735) (1987).

4. Appellant's remaining enumerations deal with the charge to the jury, generally with the court's charge on conspiracy. We find no error. *Battle v. State*, 231 Ga. 501 (202 SE2d 449) (1973); *Anderson v. State*, 153 Ga. App. 401 (3) (265 SE2d 299) (1980); see also *Ross v. State*, 255 Ga. 1 (5b) (334 SE2d 300) (1985).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Banke, P. J., Carley and Sognier, JJ., concur. Beasley, J., concurs in part and dissents in part. Benham, J., dissents.*

BEASLEY, Judge, concurring in part and dissenting in part.

1. I concur in Division 1 of the majority opinion because of pre-

cedent, but I do so more narrowly. The majority's approach puts the burden on defendant to prove harm instead of on the State to prove compliance or suffer adverse consequences. Harm should be presumed, at least unless it is shown that defendant had actual prior notice, which is the purpose of the rule. The rule by its nature implies a presumption of harm from lack of notice.

It provides for clear and positive identification to be given, by the State, *before* the hearing on the issue, so that defendant can adequately prepare to contest admissibility. See *McBride v. State*, 185 Ga. App. 271, 273 (2) (363 SE2d 802) (1987). The voids in the State's notice do not reach substantial compliance. The answers to the questions "what?", "where?" and "who?" were not answered; the answer only to "when?" was stated. As pointed out to the trial court, it leaves defendant guessing or at least uncertain.

Considering that the introduction of similar transactions is a guarded exception to the general rule against character evidence (OCGA § 24-2-2 and 24-9-20 (b)), and that Rule 31.3 carries forward the law's reticence by casting the burden of proving admissibility on the State, compliance should be enforced.

In this case, there was notice although not in accordance with the procedural rule. Defendant argued to the trial court that he was not apprised by the *document* of the facts called for in the rule, but he did not contest the statements that he knew them from a prior hearing and the supplementary sources. Had the fact been that he did not have the information required by USCR 31.3 (B), I would join in the majority's conclusion without requiring a further showing of harm. That is, a defendant should not have to prove that if he had the facts, he would have used them in some beneficial way. To win a ruling of inadmissibility, he should only have to show that he had no notice.

Of course, there is a difficulty even with an "actual prior notice" exception to enforcement of the rule, in that it allows the State to choose the method by which it notifies defendant of the facts called for.

2. I concur in the dissent with respect to Division 2, and with the majority with respect to Divisions 3 and 4.

BENHAM, Judge, dissenting.

I must dissent because I disagree with the majority opinion in Divisions 1 and 2, and would reverse the conviction on both grounds.

1. In Division 1, the majority holds that in spite of the State's noncompliance with Uniform Superior Court Rule 31.1 (253 Ga. 854 (1985)) in notifying appellant of its intent to present similar transaction evidence, similar transaction evidence was admissible because appellant should have known that the indictments in Madison County were the ones the State intended to introduce in the Ogle-

thorpe County trial, and because appellant did not show any harm to his defense as a result of the State's failure to comply with the rule. The rule requires that the notice be in writing, served upon defendant's counsel, and state the "transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice." Id., Section (B). The State's notice did not contain the transaction, county, names, or victims for each transaction, or copies of accusations or indictments. I fail to see how the majority can consider such a notice to constitute substantial compliance with the rule, as required in *Sweatman v. State*, 181 Ga. App. 474 (1) (352 SE2d 796) (1987). A defendant should not be required to piece together on his own the various components of information that the rule entitles him to receive as a whole from the State. To comply with the rule, the prosecution must reveal to appellant all the information that it has which is specified in the rule. *Patten v. State*, 184 Ga. App. 152 (3) (361 SE2d 203) (1987); *Eidson v. State*, 182 Ga. App. 321 (2) (355 SE2d 691) (1987). That rule should hold true regardless of whether a defendant previously possessed some of the information. Suppose appellant had committed other crimes in other counties on some of the dates that were listed in the Rule 31.3 notice. The mere listing of the dates with no recitation of the counties or persons involved or other required information would deny a defendant information to which he was entitled and would keep him from adequately preparing his defense against the introduction of such evidence. Had the State complied more fully with the rule, I might have been persuaded by the majority's decision that "the defendant had the requisite notice in spite of the State's failure." However, I cannot condone characterizing an undisputed, unexplained and unjustified wholesale abandonment of compliance by the State as a mere "technical violation of the rule." It is my opinion that the State should have been made to suffer the consequences of its noncompliance, and that the prosecution witnesses in question should not have been allowed to testify about the similar transactions. That testimony was clearly harmful to appellant, as it linked him to a number of burglaries that had been committed by others, and without that testimony the jury might not have reached a guilty verdict. The Uniform Rules were intended to provide just that—uniformity of the pretrial and trial process, so that the parties know, at a minimum, what information to expect, when they can expect to receive it, and when they are required to file notices or motions. If these rules are not enforced, the uniformity may remain in theory, but in practice the litigation process will devolve to the point where defendants will be subject to the vagaries of well-meaning but overzealous and/or overworked prosecutors, who may not, for

whatever reason, comply in full with the "technicalities" of our legal system. I fear that if this happens, true justice will not be served and, ultimately, everyone will suffer as a result.

2. I also disagree that the evidence was sufficient to support appellant's burglary conviction. While I do not doubt that appellant was engaged in criminal conduct, i.e., theft by receiving stolen property (OCGA § 16-8-7), the State failed to prove that he encouraged the burglar, Potts, to commit any burglary, much less the one of which he was convicted. Potts, testifying for the State, said that he took the weapons to appellant's house because he had taken guns there before and appellant had bought them, and appellant had also told him and others that if they "ever had any more guns . . . he would buy them, so . . . every gun we'd get, we'd take to him." There was no testimony that appellant had told Potts or anyone else to steal guns so they could bring them to appellant to sell. It was Potts' idea to steal items, not appellant's. Potts said that while riding down the road, he saw the victim's house and decided to burglarize it; that he did not know who lived there, did not know what was inside, and was not looking for anything in particular; that he had never talked to appellant or anyone else about breaking into that house; that appellant did not know Potts was bringing the guns to his house, nor did he know that Potts was going to break into a house and steal anything.

Another member of the ring testified that appellant never told them where to go to get items, but had told them what he would buy, what he needed, and what he could and could not sell, so the burglars tried to get items that appellant would be willing to buy. They took their items to appellant because he said he would buy what they could bring him. He further testified that appellant never told them to break into a house and steal a certain item, and he never conversed with them before they committed the burglaries. Appellant testified that he got the guns in question from his neighbor, in an attempt to assist the sheriff in locating the stolen property.

It is clear that appellant was in the business of selling marketable goods, stolen or otherwise. But the evidence does not support a burglary conviction. The fact that appellant may have known or suspected that the items were stolen does not make him guilty of burglary as a principal. Appellant's situation is not like that of the appellant in *Grant v. State*, 47 Ga. App. 234 (1) (170 SE 394) (1933), relied upon by the majority. In *Grant*, the actual perpetrators testified that the appellant "promised them that if they would steal the peanuts from Kelly, he would buy them at a reasonable price, and that he assisted them in unloading the peanuts after they had stolen them; that before they stole the peanuts they had an agreement with him that he would buy them, and that he discussed the matter with them; [and] that in the discussion he told them to get Kelly's pea-

nuts." Id. at 234. There was no evidence presented at trial to show that appellant had such a specificity of agreement or involvement. No proof was offered to show that appellant had asked or suggested that Potts commit any burglary. The majority opinion misstates the record when it asserts that appellant "clearly counseled and encouraged others to commit burglary to obtain readily marketable goods," and that appellant stated to Potts "what stolen items he would buy . . . because he could readily sell these items." In fact, the evidence was that appellant had never told Potts or others to steal anything; that Potts sought appellant out after he had broken into the victim's house and stolen the guns; that Potts himself did not decide to commit the burglary until he saw the victim's house; and that he was not looking for anything in particular. Even if appellant had known that Potts intended to steal guns from somewhere, he did not know who the intended burglary victim was, when the burglary was to be committed, and did not in any way participate in or encourage the burglars to commit the act. See *Kilgore v. State*, 251 Ga. 291 (1a) (305 SE2d 82) (1983). The majority's assertion that my reliance on *Kilgore* is misplaced is unfounded. There is no distinction between the situation in *Kilgore* and the one before us, and the majority does not attempt to draw one. Moreover, the majority's statement "[t]hat appellant did not specifically select the target of the crime is irrelevant" totally misses the point of the cases upon which it relies. It is the total lack of specificity in this case that makes the difference between evidence of guilt of the crime and the lack of such evidence. Appellant's statement about what he could sell was merely an offer to purchase items that the burglar/witnesses might have obtained at some point from some unnamed source. For all appellant knew, Potts could have been planning to obtain items by shopping at a few yard sales or trading with others rather than stealing, since the offer was that if they "ever *had* any more guns . . . he would buy them." Not only was there no direction to steal from someone in particular, there was no mandate, suggestion, or encouragement that items be stolen at all.

Although there was proof that a burglary had been committed and that appellant had possession of the stolen items, there was no proof that appellant had intentionally advised, encouraged, hired, counseled, or procured any of the actual burglars to commit the crime (OCGA § 16-2-20 (4)), and the mere proof of appellant's recent, unexplained possession of stolen goods did not establish the offense beyond a reasonable doubt. See *Bankston v. State*, 251 Ga. App. 730 (309 SE2d 369) (1983). While I agree with the majority that appellant "purchased the guns knowing they were stolen and after inquiring about the area from which the guns were stolen," that only proves appellant's guilt of theft by receiving stolen property, not burglary.

The majority relies erroneously on *Jones v. State*, 242 Ga. 893 (1) (252 SE2d 394) (1979), which was decided prior to *Kilgore*, supra. In *Jones*, the appellant, convicted of murder, had been with the other perpetrators while they planned an armed robbery, acted as a lookout while the others committed the crime, watched while one victim was shot and killed, fled the murder scene with the other murderers, and did not attempt to inform the police about her knowledge of the crimes until she was arrested two weeks later. There was clearly evidence of Jones' participation prior to, during, and after the murder. Not so here. There was nothing to prove that appellant knew the guns were going to be stolen, and, even if he did, "approval of the act, not amounting to encouragement, will not suffice [to prove that one is a party to a crime]. [Cit.]" *Moore v. State*, 255 Ga. 519 (1) (340 SE2d 888) (1986). Compare *Jester v. State*, 151 Ga. App. 277 (259 SE2d 680) (1979), in which " '[a]n alleged co-conspirator, a witness for the State, testified in great detail as to the defendant's actions in carrying out the burglary.' " In this case, the State had no such testimony.

I wholeheartedly believe that if a person is guilty of the crime for which he is charged, he should be punished. However, this court, in its zeal to accomplish that goal, should not allow omissions and mistakes of prosecutors and trial courts to go uncorrected, thereby perverting the law and reaching an unintended result. While such actions may be emotionally satisfying for the public and the judiciary on a case-by-case basis, the cause of justice and the integrity of our judicial system is not, in the long run, well served. Like *Robinson v. State*, 256 Ga. 564 (350 SE2d 464) (1986), reversing *Robinson v. State*, 180 Ga. App. 43 (348 SE2d 662) (1986), this case presents a situation in which the accused is clearly guilty of wrongdoing and should be brought to justice, but is prosecuted for a different crime. We should recognize these cases for what they are and correct errors of law when we have the opportunity to do so, lest another tribunal be forced to do it for us. See, e.g., *Gordon v. State*, 257 Ga. 335 (359 SE2d 634) (1987), reversing in part *Gordon v. State*, 181 Ga. App. 391 (352 SE2d 582) (1986). "In view of the fact that the circumstantial evidence of [appellant's] guilt fails to preclude every other reasonable hypothesis, including the explanation put forth by defendant in his testimony, and despite the fact that circumstances create suspicion of [appellant's] guilt . . . , [it is my opinion that] the verdict and judgment against [appellant should] be reversed for the foregoing reasons." *Parker v. State*, 155 Ga. App. 617 (2) (271 SE2d 871) (1980). Therefore, I respectfully dissent.

I am authorized to state that Judge Beasley joins in Division 2 of this dissent.

Decided December 5, 1988.

Crecelius & Crecelius, B. W. Crecelius, Sr., for appellant.
Lindsay A. Tise, Jr., District Attorney, John H. Bailey, Jr., Assistant District Attorney, for appellee.