## A03A0559. WOODWARD v. THE STATE.
### (585 SE2d 687)

ANDREWS, Presiding Judge.

Abdullah Woodward appeals from the judgment entered after a jury found him guilty of rape and statutory rape. Woodward claims the trial court erred in admitting similar transaction evidence, in having a discussion in chambers when he was not present, and in allowing the State to introduce evidence that he used drugs and possessed a firearm. For reasons that follow, we conclude there was no reversible error and affirm.

The evidence at trial, taken in the light most favorable to the verdict, was that the victim, C. J., who was 13 at the time, walked to a recreation center on the evening in question with a friend. At some point in the evening, C. J. went to look for her friend and found her in the parking lot talking to some young men in a car. The friend insisted they get in the car so they could have a ride home. C. J. got in the car, but the men did not take the girls home. They drove instead to a house and parked. C. J. said her friend talked her into going inside. Her friend did not go inside, however, stating that she had to go out to the car for a minute. After C. J. got inside, one of the young men came up to her and said, "Your friend did exactly what we wanted her to do." C. J. said one of the young men held her hands and one held her feet and another one, whom she identified as Woodward, raped her. C. J. said that after the rape, the men released her and left

the room. She ran outside, screaming for help, and they grabbed her and brought her back inside. She said Woodward was attempting to rape her again, when the police arrived. When they heard the police, the men in the house all scattered and ran out the back door. The victim ran out when she saw the officers and told them what happened. The officers went around to the back of the house and were able to capture Woodward and one other man.

A neighbor who lived next door to the house in which the rape took place testified that he saw the car pull up in front of the house next door. He became alarmed when he saw three men and a girl go into the house, because he said the girl looked "very apprehensive about going in." He said there was a slight struggle at the door before the men pulled her in. The neighbor said he went to get his cell phone because he was afraid something was wrong and then went back outside. He stated that after about 15 minutes, the girl came running outside, screaming. She appeared disoriented and her clothing was torn. The neighbor called 911. The neighbor identified the boys the police arrested as the ones who went into the house with the girl.

The doctor who saw the victim at the hospital testified that there was genital trauma and her physical exam was consistent with the victim's account of what occurred.

The State introduced similar transaction evidence by way of testimony of the victim in a prior case. The victim said she was 13 at the time of the incident. She said a friend and some other young men drove her to a house in the same neighborhood as the house in which the rape in the instant case occurred. After she was inside the house, Woodward and two other men came in and she was raped by several of the men, including Woodward. She said that her aunt and her grandmother persuaded her to drop the case and it was not prosecuted.

The jury convicted Woodward of rape and statutory rape, and the counts were merged for sentencing. This appeal followed.

1. The trial court did not err in allowing the State to file its notice of intent to present evidence of similar transactions. Uniform Superior Court Rules 31.1 and 31.3 provide that the State must give written notice of its intent to introduce similar transaction evidence. The notice "shall be given and filed at least ten (10) days before trial unless the time is shortened or lengthened by the judge." USCR 31.1. Reducing the time period for notice is a matter within the court's discretion which will not be disturbed by this Court absent abuse of that discretion. *Thaxton v. State*, 260 Ga. 141, 144 (390 SE2d 841) (1990).[1]

---

[1] In this case, the State filed its notice of intent just before trial.

The evidence at the hearing was that the victim's name was on the witness list and the prosecutor had discussed this evidence and put counsel on notice several months before trial of the State's intent to introduce this evidence. Although defense counsel acknowledged that he knew about the prior occurrence before the State did and also acknowledged having conversations with the prosecutor about the similar transaction, he stated that because he never received the written notice, he did not know the State was actually going to introduce the evidence. The prosecutor responded that after all the conversations about this evidence, she could not imagine how defense counsel could have been in any doubt that she intended to introduce it because "it was made very clear that I did intend to use it."

After hearing these arguments, the court determined that, under the circumstances, defense counsel could not claim to be "surprised" by the evidence. Defense counsel requested a recess until the following morning so he could review the file. The prosecutor did not object and offered to make the file available to defense counsel to review overnight. The court granted the request.

Woodward cites *Story v. State*, 196 Ga. App. 590, 591 (396 SE2d 547) (1990), as authority for his argument, but that case is not on point. In *Story*, no notice was ever given to defendant and this Court properly held the evidence was inadmissible. Id. *Story* also holds that " 'non-compliance with the rule puts the burden on the State to prove that its violation of the rule's requirements did not harm the defendant. . . . [T]he State can avoid the consequences of its failure to adhere to the rule by showing that the defendant had the requisite notice in spite of the State's failure.' " Id. at 591. In that case, the court concluded that merely serving the defendant with the State's file, with no indication whatsoever that the State intended to use the evidence or that defendant knew the State intended to use the evidence, did not provide sufficient notice. Id.

That does not apply in this case. Here, the State provided the court with evidence that defendant had the requisite notice despite the late filing of the written notice. Defense counsel acknowledged that he was aware of the prior offense even before the State knew about it and that he discussed it several months before trial with the prosecutor. The prosecutor stated positively that she made clear that she intended to introduce the similar transaction.

In a similar case, the State never filed a notice of intent to introduce the similar transaction. *James v. State*, 209 Ga. App. 182 (433 SE2d 132) (1993). But, the State argued that it substantially complied with Rule 31.3 because appellant had sufficient notice of the evidence and the trial court ruled it admissible more than a year before trial. Id. This Court concluded that, under the circumstances, appellant had the requisite notice. Id. at 183.

Here, Woodward also had sufficient notice of the similar transaction evidence and the trial court did not abuse its discretion in shortening the time required for filing the State's notice of intent. See *James,* supra; *Todd v. State,* 189 Ga. App. 538 (376 SE2d 917) (1988).

2. Next, we must determine whether the court erred in not granting Woodward's motion for continuance. "Whether to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Greene v. State,* 274 Ga. 220, 221 (3) (552 SE2d 834) (2001).

In asking for the continuance, defense counsel stated that "there are witnesses I may need to talk to." He said there were witnesses that he "would have probably called to trial to rebut [the victim's] testimony, but I haven't had an opportunity to talk to those people."

But, counsel had been on notice for five months that the State intended to call the victim because she was on the State's list of witnesses. Moreover, Woodward did not give the court any specific information as to why the continuance was necessary. He did not specify which witnesses he needed to call and did not tell the court what he expected their testimony would show. See *Manning v. State,* 273 Ga. 744-745 (545 SE2d 914) (2001) (because defendant did not provide sufficient information to the trial court that explained the need for additional witnesses, court did not err in denying motion for continuance).

As the trial court correctly noted, the continuance could not be granted on the grounds that the evidence was a surprise to the defendant. Further, OCGA § 17-8-20 requires that the party applying for a continuance must show that he has used due diligence. Here, despite having known about the evidence and acknowledging that he was aware that the victim's name was on the State's list of witnesses, counsel chose to do nothing. The court stated, "well, when you say you haven't had the opportunity, you've known about this for a considerable period of time. I mean, if you had chosen to do it, fine. The fact that you chose not to do it is no grounds for a continuance." See *Burney v. State,* 244 Ga. 33, 40 (257 SE2d 543) (1979) (trial court did not abuse its discretion in refusing to grant a continuance because of absence of material witnesses where defendant was not diligent in attempting to secure their presence).

And, on appeal, Woodward does not point out any harm as a result of the denial of the continuance. The State's only witness was the victim in the prior case. Counsel was aware that she was on the witness list, he did not request an opportunity to interview her before trial, he was able to cross-examine her at trial, and he fails to point out any additional witnesses or evidence he should have been allowed to present. See *Greene,* supra at 222; *Johnson v. State,* 255 Ga. 703, 704 (342 SE2d 312) (1986) ("Where there is no indication·

that the continuance would have benefited the defendant, it cannot be said to be necessary."); *Christian v. State*, 244 Ga. App. 713 (536 SE2d 600) (2000) (although State did not provide certain evidence as required and defense counsel saw this evidence for the first time on the day of trial, there was no error in denying motion for continuance because defendant could not show harm). It is the well-established rule in this State that harm as well as error must appear in order to warrant a new trial. *Dill v. State*, 222 Ga. 793, 794 (152 SE2d 741) (1966).

Accordingly, because the trial court is vested with wide discretion as to whether to grant a defendant's motion for continuance and because Woodward was unable to show that he used due diligence in preparing for trial, was unable to provide specific information as to why he needed a continuance, and is unable on appeal to show any harm as a result of the court's ruling, there was no abuse of discretion in the court's refusal to grant a continuance.

In light of the victim's identification of Woodward, the neighbor's corroboration of the victim's description of events, and the doctor's evidence as to physical trauma, it is highly probable that even if the trial court had erred in allowing the evidence of the similar transaction, this did not contribute to the verdict. *Johnson*, supra.

3. Woodward also claims the trial court erred in instructing the jury when he was not present. This is a misrepresentation of what occurred at trial. Woodward cites us to no point in the transcript where the court charged the jury in his absence, and, indeed, this did not occur. It appears that, according to remarks made by defense counsel, a question from the jury was discussed in chambers and Woodward was not present. Woodward does not point to, and we do not find, anywhere in the transcript where counsel objected to Woodward's absence from this discussion in chambers. When counsel moved for a mistrial, the court responded:

> I don't think you insisted upon that at all; and I think you approved of that procedure at the time. And I resent the fact that you are now in a sense sandbagging the court. I would also say that there wasn't any oral communication with the jury. I would also say that the answer to the question was: in effect, no answer; and that you approved the language that was written on that note.

First, we note that Woodward's argument in support of this enumeration consists solely of cases in which the jury was charged in defendant's absence, and that is not what happened in this case. Accordingly, he does not support this enumeration with any pertinent argument.

Second, case law holds that a criminal defendant has a right to be present "at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. As defined by our Supreme Court, a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." (Punctuation and footnotes omitted.) *Jackson v. State*, 252 Ga. App. 157, 161 (555 SE2d 835) (2001).

Here, Woodward does not point out how the case was substantially affected by his absence from the discussion in chambers and we cannot discern any harm from the record. In a recent case on point, the Supreme Court of Georgia determined that the defendant's exclusion from a similar conference was not error. *Parks v. State*, 275 Ga. 320, 324 (565 SE2d 447) (2002). The court held that "there did not exist a 'reasonably substantial relation' between [the defendant's] presence and his opportunity to defend against the charges against him." Id. at 325 (3). Accordingly, this enumeration is without merit.

4. In his last enumeration, Woodward claims the trial court erred in denying his motion for mistrial after the State elicited testimony that he was using drugs and carrying a gun. The victim testified that after she was raped, Woodward and the other men went outside where they had a "plate of drugs and they [were] chopping it up and they took a razor and they put it toward their nose." The similar transaction victim testified that Woodward had a gun when he was arrested.

This evidence was admissible. "The state may inform the jury of all the circumstances surrounding the commission of the crimes charged. Additionally, all of the circumstances surrounding an arrest are admissible for whatever value the jury wants to place on them." *Brumelow v. State*, 239 Ga. App. 119, 123 (520 SE2d 776) (1999).

*Judgment affirmed. Johnson, P. J., Eldridge and Adams, JJ., concur. Blackburn, P. J., and Mikell, J., concur in the judgment only. Barnes, J., dissents.*

BARNES, Judge, dissenting.

As I believe that the majority has today effectively eliminated Uniform Superior Court Rule 31.1, I must respectfully dissent. Because the trial court erred by denying Woodward's motion for a continuance and by allowing the State to introduce the similar transaction evidence without complying with USCR 31.1 and 31.3, I would reverse this case.

This appeal concerns whether the Uniform Superior Court Rules apply equally to the prosecution and to the defendant and whether the prosecution must suffer any consequence for completely failing to

comply with them. As I believe that the Rules must apply equally and that there must be consequences for ignoring the Rules, I cannot agree that Woodward's conviction should be affirmed.

The majority, however, excuses the prosecution's *total* failure to comply with the Rules[2] because the victim of the similar transaction was listed on the prosecution's witness list and because the prosecutor many months before the trial told defense counsel that she intended to introduce evidence of the similar transaction and discussed the matter with him. I cannot accept this reasoning for it permits oral, informal notifications of the State's intent to introduce similar transaction evidence, when the Rule requires written notice that has been filed with the court.[3]

Further, I cannot accept the majority's characterization of the trial court's actions as merely shortening the time in which the State could file its notice of intent to introduce the similar transaction evidence under USCR 31.1. The State made no request to shorten the time; the prosecutor, without filing or serving any notice on the defense, orally sought authority from the trial court to introduce the similar transaction evidence. While the trial court's action had the effect of reducing the notice period, in actuality the trial court merely eliminated the time provided in the Rule. In my opinion, the effect of the trial court's action was to *waive* the ten-day notice requirement of the Rule. As no such authority is granted under the Rule, I cannot agree that the trial court's procedure should be allowed to stand. As we are now countenancing this procedure, we may as well announce that the Rule has been eliminated and return to trial by ambush — the very thing the Rule was intended to eliminate.

Given the usual course of litigation, oral notices will become the rule and not an exception. Soon we will be determining how little oral notice will suffice: Will a passing mention in a hallway be enough, a telephone message, or some sort of informal conversation? And, after that we will measure how definite the oral notice must be: Can the prosecution simply suggest that it might introduce similar transaction evidence, or must the intention be more definite? As USCR 31.1 was designed to eliminate this uncertainty, I cannot accept the majority's result.

Also, I cannot agree that merely listing a witness on the witness list and saying that the witness will be called to testify about a similar transaction is sufficient to put counsel on notice that the State

---

[2] I say total failure to comply with the Rule because the State gave no written notice of its intent to introduce the similar transaction before asking the court to be allowed to do so, the earlier information was oral, and it was not filed with the court.

[3] In this case, even though the hearing was delayed, the notice was not filed before the hearing began.

will not comply with the Rules, and, therefore, defense counsel must conduct an investigation of the witness's prospective testimony as if the State had complied with the Rules. Given the constraints of any lawyer's resources, but especially those limiting the time and resources of a public defender's office, I do not find unreasonable defense counsel's decision to wait until the prosecution gave the notice required by the Rules before beginning his investigation. This decision appears more reasonable in light of the State's *repeated* failure to give notice even though the case had appeared on several previous trial calendars, and the fact that what appeared to be a serious offense had been dead docketed by the State.

Because the State's only excuse for its failing to give the required notice was that it was an "oversight," I must question whether the prosecution merely forgot to give the notice on the other occasions as well, or whether the prosecution simply vacillated on whether to seek introduction of this evidence between the time the prosecutor first mentioned it to defense counsel and the actual trial date. I do not believe that we should hold defense counsel responsible for what may have been the prosecutor's indecision. Further, holding that the procedure used in this case is permissible under these circumstances now allows prosecutors to hamper the defense's effectiveness by requiring that the defense investigate all potential witnesses as similar transaction witnesses, whether the prosecution has made the decision to call those witnesses or not.

The majority excuses the failure to grant a continuance because defense counsel could not be specific about why the continuance was required. It seems to me, however, that the basis and need for the delay were perfectly obvious, and counsel could not be more specific because the prosecutor, intentionally or not, had sandbagged him by not giving notice under the Rules. Indeed, how could counsel have identified the witnesses he needed to interview or what actions were required when the lack of notice deprived him of the opportunity to make these determinations? Further, the prosecution gave no compelling reason for refusing the continuance; the only reason given by the prosecutor for opposing the continuance was that she did not want to wait. Consequently, we have the unusual situation where the party who, by ignoring the Rule, created the need for a continuance benefits from its failure.

Finally, I cannot find that these errors were harmless. I acknowledge that the crime for which Woodward was convicted was serious and the testimony underlying the conviction established reprehensible conduct. Nevertheless, the prosecution felt that it was necessary to introduce the similar transaction evidence to secure the conviction, and we are aware that similar transaction evidence is by its nature particularly compelling. More importantly, however, appli-

cation of the harmless error rule in this case is inappropriate because the prosecution's conduct induced the error. By excusing this conduct, the majority is rewarding the prosecution's disregard of the Rules. Woodward was entitled to a trial conducted in accordance with the Rules even though he was charged and convicted of a serious offense. In my view, the serious nature of the charge heightens the prosecution's responsibility, not lessens it.

USCR 31.1 and 31.3 provide that:

> Notices of the state's intention to present evidence of similar transactions or occurrences . . . *shall be given and filed at least ten (10) days before trial* unless the time is shortened or lengthened by the judge. Such filing shall be in accordance with the following procedures.

(Emphasis supplied.) USCR 31.1.

> (A) The prosecution may, upon notice filed in accordance with section 31.1 of these rules, request of the court in which the accusation or indictment is pending leave to present during the trial of the pending case evidence of similar transactions or occurrences.
>
> (B) The notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice. The judge shall hold a hearing at such time as may be appropriate, and may receive evidence on any issue of fact necessary to determine the request, out of the presence of the jury. The burden of proving that the evidence of similar transactions or occurrences should be admitted shall be upon the prosecution. The state may present during the trial evidence of only those similar transactions or occurrences specifically approved by the judge.

USCR 31.3.

Nevertheless, the prosecution waited until the day before Woodward's trial was to begin to ask the trial court to allow it to introduce evidence of a similar transaction. Woodward immediately objected because he had not received written notice of the State's intent to introduce evidence of a similar transaction as required by USCR 31.3, and no notice was on file with the trial court. The State's response was that failure to give notice was an oversight and that the trial court should allow the State to introduce the evidence anyway

because Woodward was aware of the State's intention because the victim of the similar transaction was on the prosecution's witness list, and the prosecutor had discussed with Woodward's defense counsel that the State had located this similar transaction and told him that the State intended to use it.

Woodward's counsel contended that his recollection of the conversations differed from the prosecutor's, and also contended that any discussion with the prosecutor "was many, many months ago," that they were in the context of the prosecutor encouraging defense counsel to enter a guilty plea, and that counsel waited for the notice from the prosecution to see if the State really intended to use the similar transaction. Defense counsel concluded that, as he had not received the required notice, perhaps the State had witness problems or perhaps the prosecutor decided not to use the similar transaction because the case was so weak it had been dead docketed, or, indeed, that the use of the similar transaction was merely a threat. Also, he contended that his conclusions were justified because the case had been on numerous earlier trial calendars and he had never received any written notice from the prosecutor of her intention to use the similar transaction.

After Woodward's comments, the prosecutor stated that she did not want to delay this case because the case had been delayed for various reasons by the defense, and the prosecutor wanted to go forward, and the trial court found that the prosecutor's actions were sufficient.

Woodward's counsel then stated that he was not prepared to litigate the issue and asked to delay the hearing until the following morning. After the prosecutor agreed to turn over the State's file on the similar transaction, the trial court agreed to hold the hearing the next morning.

The next day, the prosecutor stated that her paralegal was going to file the notice so that she was prepared to proceed with the hearing on the similar transaction evidence. At that point the prosecutor stated in her place the information the State wished the trial court to consider regarding the similar transaction. The trial court, however, did not rule on the State's request at that time, but deferred its decision until after jury selection, even though Woodward requested that the court do so before jury selection because whether the similar transaction evidence was going to be admitted would affect the way the jury was selected.

Woodward's counsel also argued that he was not prepared to go forward because he was being asked to defend, on one day's notice, what was essentially a second rape case, that he had been informed by Woodward's father that there were witnesses whom he needed to interview, but he had been unable to do so. He had not been able to

subpoena any potential witnesses, and thus he requested a continuance.

The trial court denied the continuance because Woodward had known about this for a long time, but he chose not to interview the witnesses. Therefore, he could not claim that he was surprised.

After the jury was selected, the trial court ruled that the similar transaction evidence could be admitted, and Woodward again moved for a continuance, which the court immediately denied.

"The purpose of the time requirement of USCR 31.1 is fundamental fairness. The rule recognizes the difficulty of rebutting evidence of specific acts unless timely notice of the state's intention to offer evidence is given." *Loggins v. State*, 260 Ga. 1, 2 (2) (388 SE2d 675) (1990). The Rule's purpose is to provide a criminal defendant *adequate* notice of the State's intent to use similar transactions to enable the defendant to resolve questions regarding admissibility of such evidence before trial, *Todd v. State*, 189 Ga. App. 538, 539 (1) (376 SE2d 917) (1988), and to give a criminal defendant *fair and adequate* notice of the State's intention to introduce evidence of a prior similar transaction, *Howard v. State*, 194 Ga. App. 443 (390 SE2d 662) (1990), *so the defendant would have time in which to prepare a response that would otherwise not usually be available during a jury trial. Harmon v. State*, 259 Ga. 444-445 (2) (383 SE2d 874) (1989). This court's rulings in this case eviscerate these principles.

Further,

[a] violation of the rule must result in prejudice to the defendant. The rule clearly presupposes that the State's failure to comply with the rule will result in harm to the defendant by failing to give him adequate notice of the similar transactions sought to be used by the State. Consequently, non-compliance with the rule puts the burden on the State to prove that its violation of the rule's requirements did not harm the defendant. However, the State can avoid the consequences of its failure to adhere to the rule by showing that the defendant had the requisite notice in spite of the State's failure. The mere fact that appellant may have been served with the State's file, with no indication whatsoever that the State intended to use the similar offense as evidence in appellant's trial or that appellant knew that the State so intended, would not suffice to provide the requisite notice. *The rule contemplates that a defendant be apprised of the State's intent to use a similar offense as evidence and not*

*that he merely be informed of the State's possession of evidence of a similar offense.*

(Citation and punctuation omitted; emphasis supplied.) *Story v. State*, 196 Ga. App. 590, 591-592 (396 SE2d 547) (1990). The prosecution did not prove that Woodward was not harmed by its actions, and the majority now shifts the burden to Woodward to show that he was not harmed.

Although USCR 31.1 grants the trial court complete discretion in deciding whether to vary the time for filing of the notice and the trial court's decision will not be upset absent abuse, *Armstrong v. State*, 265 Ga. 18, 19 (2) (453 SE2d 442) (1995), I believe the trial court abused its discretion. The court gave Woodward no opportunity to interview any witnesses. Compare *Watkins v. State*, 206 Ga. App. 701, 703 (1) (a) (426 SE2d 238) (1992). Further, this is not a case of newly discovered evidence. Compare *Chemielowiec v. State*, 250 Ga. App. 66, 67 (2) (550 SE2d 120) (2001). Moreover, although not mandatory, *Thaxton v. State*, 260 Ga. 141, 144 (6) (390 SE2d 841) (1990), USCR 31.2 provides that the hearing on notices "[g]enerally . . . will be heard at or after the time of arraignment and prior to the time at which such case is scheduled for trial." Of course, because of the prosecutor's actions this was not done in this case.

I believe that Woodward was entitled to rely upon our Rules, *Price v. State*, 245 Ga. App. 128, 133 (2) (b) (535 SE2d 766) (2000), and to expect that the State would comply with them. Therefore, I believe it was reasonable under the circumstances of this case, where the similar transaction, a seemingly serious offense, had been dead docketed and the case had been placed on several trial calendars without the State ever giving notice of its intention to introduce this evidence, for Woodward to delay his investigation of any similar transaction evidence until he was provided with the required notice, even though he was aware that the State had information about a similar transaction and *might* attempt to use it. This is what our Rule allows, and I believe that the trial court, and the majority focus too much on what, in hindsight, Woodward's defense counsel might have done if only he had known that the prosecution would completely ignore the Rule, and not enough on the prosecution's failures, which caused this problem. This court now rewards the prosecution for failing to comply with the Rules.

Here, the State's failure to provide timely notice of its intent is compounded by its failure to have a valid reason for not doing so; the State merely recited that it was an "oversight." In this regard, the State had as much knowledge of the similar transaction as Woodward, but completely failed to comply with the Rule, and yet the

State's failure is excused if not rewarded, while Woodward is penalized.

Moreover, given the State's complete disregard of the Rules, I am troubled by the trial court's proceeding to trial without giving Woodward any opportunity to investigate the case once the State's intent was finally made known. The only reason given by the State for insisting on proceeding immediately is that the State did not want any further delay.

Under these facts, I find that the State has not proven that Woodward was not harmed and that the trial court abused its discretion by requiring Woodward to go to trial. Accordingly, as I would reverse the judgment of the trial court, I must respectfully dissent.

DECIDED JULY 15, 2003 — 

*Adeline A. Johnson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.