## A04A2246. CROUSE v. THE STATE.
(611 SE2d 113)

SMITH, Presiding Judge.

Ronald Crouse was convicted by a jury of eight counts of illegal dumping, one count of illegal storage of solid waste, one count of illegal handling of solid waste, one count of failing to file a manifest or other document, and operating an unlawful landfill. His motion for new trial, as amended, was denied. Crouse appeals, raising as error a fatal variance between the allegations of the indictment and the proof at trial, the order of the State's witnesses, the admission of similar transaction evidence, and ineffective assistance of counsel. We find no merit in Crouse's contentions, and we affirm.

Construed in favor of the verdict, the State presented evidence that Crouse operated a business known as R&M Auto Salvage at 101 Bob White Road in Cobb County. Without the knowledge of the adjoining landowners, without a permit or license to do so, and for a fee, Crouse allowed contractors to dump construction debris on his property and the adjoining property. John Lee, an employee of the adjoining landowners, discovered that the property was being used as a landfill, and an investigation by the Georgia Department of Natural Resources (DNR) ensued.[1]

Jerry Campbell, an environmental specialist with DNR, testified that the investigation revealed "a variety of classifications of solid waste," including municipal solid waste, construction demolition waste, and inert waste. One witness testified that he had hauled several loads of contaminated soil, or "muck," onto the site, stating that the soil "had a diesel smell to it. And there was some tires and other debris." He also hauled "unsuitable soil and trees" to the site. Other witnesses testified that they dumped construction debris on

---

[1] The adjacent property was part of a 322-acre tract, on which the owners operated an industrial park. The owners lived in New York, and Lee, who managed the park, testified that Crouse told him, "[T]hose dumb Yankee SOBs, they don't know what's going on down here."

the site. Similar transaction evidence was presented that 95 loads of "Wonderboard," sheets of "lightweight backer board" used for tile installation, were dumped on the site.

According to the indictment, Crouse's illegal activities occurred between August 4, 1998 and September 15, 1998. Crouse testified that he and his wife began operating R&M Salvage in 1983 and that they leased the property at 101 Bob White Road from a man named Gerald Tankersly. He stated that although he regularly visited R&M Salvage between 1996 and September 1998, he was not involved in the daily operations of the business during that time period. Crouse testified further that his wife, who died before trial, had tried "to run the yard with the help of" their son and two other individuals and that he "came back in . . . September of '98 when my son called me and told me his mother was very bad off and ready to go."[2] According to Crouse, he never had a bank account, and his wife was the only signatory on the business bank account. He testified that his wife "kept all the books up. And her sister was the controller of the money anyway. And they more or less kept up with the money in the bank and paid the bills and this and that and everything else, too." Before he allegedly left the daily operations of the business in 1996, Crouse was aware that dirt and debris were being dumped on the junkyard and the adjoining property. He testified that no one ever told him he needed a permit.

1. Crouse contends that the verdict is not supported by the evidence, on the ground that a fatal variance exists between the allegations in the indictment and the proof at trial. He argues that reversal is required because the State failed to present evidence of the legal description of the property on which the offenses occurred, despite the fact that the indictment described the property by use of a legal description.

The indictment alleges that the offenses occurred "on undeveloped property situated on land lots 703 and 704 in the 18th district and second section of Cobb County adjacent to 101 Bob White Road, Austell, Georgia." It is undisputed that specific evidence showing the legal description of the property was not introduced at trial. Of course, as argued by Crouse, "venue is a material and necessary fact which is required to be alleged in the indictment." See *Brown v. State*, 181 Ga. App. 865 (354 SE2d 169) (1987). The indictment, however, clearly alleged that the crimes occurred in Cobb County, and the State proved venue. It introduced evidence that the business operated by Crouse was located at 101 Bob White Road, in Cobb County, Georgia,

---

[2] It appears that Crouse and his wife were living separately at the time.

and that he permitted dumping on that property and the adjacent property, which was also located in Cobb County.

Crouse was charged with illegal dumping, illegal storage of solid waste, illegal handling of solid waste, failure to file a manifest, and operating an unlawful landfill. Unlawful dumping occurs when a person dumps waste "on any private property, unless prior consent of the owner has been given and unless such dumping will not adversely affect the public health and is not in violation of any other state law, rule, or regulation." OCGA § 16-7-52 (3). The term "waste" is defined at OCGA § 16-7-51 (6) and includes construction and building materials. OCGA § 12-8-30.8 (a) (2) (A) makes it illegal to store or dispose of solid waste without a permit. "Solid waste" includes "any garbage or refuse." OCGA § 12-8-22 (33). And under OCGA § 12-8-30.8 (a) (4), it is a crime to knowingly store, dispose of, or handle solid waste without "any record, application, manifest, report, or other document required to be maintained or filed for purposes of compliance with this part." Finally, operation of an illegal landfill occurs when a person fails to obtain a permit from the director of the Environmental Protection Division of the DNR. OCGA §§ 12-8-24 (a); 12-8-22 (7).

The crimes described above were complete when Crouse allowed or caused the illegal dumping or storage of waste or solid waste without permission from DNR and without filing proper documentation. As stated in *Callaway v. State*, 247 Ga. App. 310 (542 SE2d 596) (2000):

> [M]ere surplusage will not vitiate an indictment, and need not be established in proof. The material facts which constitute the offense charged must be stated, and they must be proved in evidence. But allegations not essential to such purpose, which might be entirely omitted without affecting the charge and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence.

(Citation, punctuation and footnote omitted.) Id. at 314 (1) (b). In other words, although all allegations that describe the offense or the way it was committed "must be proved as alleged, an unnecessary description of an unnecessary fact need not be proved." (Citation, punctuation and footnote omitted.) Id. The legal description of the subject property in this case was not an element of the offenses charged, and any such description in the indictment was unnecessary and constituted mere surplusage. Consequently, the State was not required to introduce actual proof of the legal description "in order to obtain a conviction." Id.

2. Crouse argues that the trial court erroneously allowed the State to introduce evidence relating to its case-in-chief after introducing similar transaction evidence. Before trial, the court instructed the prosecutor to prove the State's "case first before putting in the similar transactions." The court gave a similar instruction to the prosecutor during the course of the trial. After the State introduced testimony of several witnesses establishing the occurrence of the allegations of the indictment, the State introduced evidence of similar transactions. The State then introduced the testimony of Dr. James Claffey, a chemical engineer, who testified that the cost to remediate the damage to the property was approximately $800,000. Crouse contends that the purpose of Dr. Claffey's testimony "was to show that the victim sustained significant financial damage," that "Dr. Claffey's testimony had absolutely no relation to a similar transaction," and that the testimony "did nothing but enflame [sic] the passions of the jury just prior [to] the close of the State's evidence."

Even though the State may not have complied with the trial court's instructions, Crouse did not object to Claffey's testimony on the ground that the State had presented evidence in contravention of the previous ruling. In fact, rather than object, defense counsel attempted to cross-examine Dr. Claffey about a civil settlement, asking if he had "any idea how many companies will contribute to seeing that [the solid waste] is removed." The trial court sustained the State's objection to this inquiry.

> Counsel may not idly sit by and watch when possible error is presented and on appeal claim error. It is necessary, in order to make the same a basis for appellate review that opposing counsel make proper objection or invoke some ruling of the court. A party cannot ignore what he thinks to be error, take his chance on a favorable verdict, and complain on appeal.

(Citations and punctuation omitted.) *Grogan v. State*, 230 Ga. App. 876, 877 (497 SE2d 589) (1998). Crouse did not object to the order of the State's evidence at the time of Dr. Claffey's testimony, nor did he otherwise invoke the trial court's prior ruling on this issue. He therefore cannot now complain.

Even in the absence of waiver, however, reversal is not required. It is axiomatic that a party must show harm as well as error to prevail on appeal. *Banks v. State*, 270 Ga. App. 221, 223-224 (5) (606 SE2d 34) (2004). Given the overwhelming evidence showing that Crouse illegally permitted the dumping of massive amounts of solid waste, error, if any, was harmless. Id.

3. Crouse contends that the trial court erroneously admitted evidence of similar transactions, due to a misnomer on the notice

required by Uniform Superior Court Rule 31.3. During pretrial proceedings, Crouse's counsel stated that he did not oppose the admission of six similar transactions. He objected to the evidence, however, just before the State introduced the testimony of the similar transaction witnesses, on the ground that the notices listed the defendant's son, Ronald E. Crouse, Jr., rather than the defendant, Ronald E. Crouse, Sr.

Crouse correctly argues that the State's notice "names a person as the perpetrator who is not only known to the defendant, but was present at the site and involved in the business." But although the notices did incorrectly list Ronald E. Crouse, Jr., as opposed to Ronald E. Crouse, Sr., they also clearly advised Crouse that the State intended to present evidence of similar transactions *"of Defendant"* and that the evidence was "admissible as evidence of continuous criminal transaction and conduct *of Defendant.*" (Emphasis supplied.) Furthermore, given the timing of defense counsel's objection, which came during the trial of the case and after he had earlier stated that he had no opposition to the evidence, it appears that defense counsel did not even notice the misnomers until just before the State introduced the testimony of the similar transaction witnesses. In his appellate brief, Crouse even states that "[a]lthough the original notice was timely filed, the first notice defendant received of the misnomer was in the moment following trial counsel's objection."

The purpose of the notice requirement contained in USCR 31.3 is "to provide a criminal defendant adequate notice of the State's intent to use similar transactions to enable the defendant to resolve questions regarding admissibility of such evidence before trial." *Todd v. State,* 189 Ga. App. 538, 539 (1) (376 SE2d 917) (1988). Reversal is required only if a violation of the rule "result[s] in prejudice to the defendant." Id. The misnomers in the State's notices appear to have been typographical errors, and nothing in the record shows that Crouse was confused, misled, or otherwise harmed by those errors. We find no merit in this enumeration.

4. Crouse argues that he was denied effective representation because of his trial counsel's failure to object to the testimony of certain witnesses. To prevail on a claim of ineffectiveness, a defendant must show that trial counsel was deficient and a reasonable likelihood that but for that deficiency, the outcome of the trial would have been different. *Roebuck v. State,* 277 Ga. 200, 206 (10) (586 SE2d 651) (2003). To demonstrate deficient performance, "a defendant must rebut the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." (Citations and punctuation omitted.) Id. "A reviewing court must be highly deferential to those choices made by defense

counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." (Citations and punctuation omitted.) Id. at 207.

After thoroughly reviewing Crouse's contentions, we conclude that trial counsel made reasonable tactical decisions to which we must defer. See *Roebuck,* supra, 277 Ga. at 206 (10). Furthermore, even assuming that trial counsel's performance was somehow deficient, the evidence properly admitted against Crouse overwhelmingly demonstrated his guilt of the crimes charged, and we find no reasonable likelihood that any deficiency improperly influenced the outcome of the trial. Crouse has not established that he was denied effective assistance of counsel.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 1, 2005.

*James S. Anderson,* for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.

