## S02A0352. PARKS v. THE STATE.

(565 SE2d 447)

SEARS, Presiding Justice.

The appellant, Deunte Parks, appeals from his convictions for the malice murders of Monquita Scott and Beryl Murrill, for burglary, and for the aggravated assaults of Qiana Murrill and Tranese Wilburn.[1] On appeal, Parks contends, among other things, that the evidence is insufficient to support his convictions, that the trial court erred in admitting hearsay statements into evidence, and that the trial court erred in not having Parks present at every bench conference held during the trial. We conclude that these contentions, as well as Parks's other contentions, have no merit, and we therefore affirm.

1. The evidence introduced at trial shows that on the night of July 21, 1996, Monquita Scott was spending the night at the home of her aunt, Beryl Murrill. Monquita's cousins, Qiana Murrill and Tranese Wilburn, were also at Beryl Murrill's apartment that night. In the early morning hours of July 22, when the occupants of the apartment were all upstairs, someone threw a brick through the sliding glass door in the lower level of the apartment and entered. Qiana Murrill and Tranese Wilburn testified that they went to the top of the stairs and saw Parks, who was pointing a gun at them, coming up the stairs. According to Qiana and Tranese, Parks then went upstairs, and as the occupants of the apartment were hiding in two bedrooms, Parks shot Monquita Scott, her aunt, and Qiana and Tranese. Each victim was shot twice, except for Qiana Murrill, who was shot five times. Qiana Murrill and Tranese Wilburn survived, but Monquita died that day and her aunt died a week later.

There was evidence introduced at trial that Monquita Scott and Parks had dated for some time before the shooting, and that they had had a child together. Monquita did not live with Parks, but lived with her mother, Glenda Scott. There was evidence that after the child was born, their relationship began to deteriorate. Based partly on statements made to her by Monquita, Glenda Scott testified that Monquita and Parks had verbal and physical fights, and that Parks

---

[1] The crimes occurred on July 22, 1996, and Parks was indicted on April 9, 1999. Following a jury trial, Parks was found guilty on July 15, 1999. On July 16, the trial court sentenced Parks to 20 years in prison for the burglary conviction, to consecutive life sentences on the malice murder convictions, and to a consecutive term of 20 years in prison on the aggravated assault conviction. Parks filed a motion for new trial on August 3, 1999. The court reporter certified the transcript on November 17, 21, and 29, 1999, and on December 6, 1999. Parks filed an amended motion for new trial on January 4, 2001, and the trial court denied the motion for new trial, as amended, on September 7, 2001. Parks filed a notice of appeal on September 28, 2001, and the case was docketed in this Court on November 19, 2001. The case was orally argued on February 5, 2002.

would call Monquita incessantly. Glenda Scott testified that on July 8, 1996, Parks entered her house, fought with Monquita, and scratched and bruised her. Glenda Scott also testified that on July 12, 1996, Parks called repeatedly to speak with Monquita, and she (Glenda) would not let him do so. Parks told her that "[y]ou know, bitch, you don't know who you're f—ing with." Later that same day, Glenda testified that she saw Parks walking away from her car and that all the windows were broken out of it. According to Glenda, on July 20, Parks called her home repeatedly and asked to speak to Monquita. She would not let him do so, and on one call, he told her that "[y]ou don't know who you're f—ing with because my buddies will come and shoot up your house."

Stephanie Ragland, a friend of Parks's, testified that Parks had scratches on his face at some point while the Olympics were in Atlanta, and during the weekend of the shooting, July 19-21, 1996, the Olympic Games had started. Ragland also testified that Parks told her that Monquita and her sister had "jumped on" him, and that "[t]hose bitches are going to learn not to f— with me." Ragland added that she was familiar with guns, and that she had seen Parks with a black gun that looked like a nine millimeter. Although a murder weapon was not recovered, nine millimeter shell casings were found on the floor of the home.

Ryan Johnson, who had known Parks for many years, testified that Parks told him that he had killed Monquita Scott, and that Parks's exact words were that "I tried to kill all them mother f—ers."

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Parks guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Parks contends that the trial court erred in permitting the State to introduce certain hearsay statements made by Monquita Scott to her mother. We conclude that most of these statements were properly admitted under the necessity exception to the hearsay rule, and that although one was not, its admission was harmless error.

For hearsay to be admissible under the necessity exception, (1) the out-of-court declarant must be unavailable to testify, (2) the hearsay statements must be relevant to a material fact and must be more probative evidence concerning that fact than other evidence available to the State, and (3) the hearsay statements must have been made under circumstances indicating their trustworthiness.[3] In the present case, the victim was deceased and thus unavailable to testify.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Yates v. State*, 274 Ga. 312, 318 (553 SE2d 563) (2001); *McPherson v. State*, 274 Ga. 444, 450-451 (553 SE2d 569) (2001).

Moreover, we conclude that all but one of Monquita's statements to Glenda were relevant to demonstrate the prior difficulties between Monquita and Parks and that there was no other non-hearsay evidence that was as probative of those difficulties. In addition, because Monquita's mother testified that she and Monquita had a good "mother-daughter" relationship, that they talked about everything, and that Monquita could come to her with any problems, we conclude that the statements were made under circumstances indicating their trustworthiness.[4] Finally, as to one statement that Monquita made to her mother to the effect that she (Monquita) had had a vision of the Virgin Mary, we conclude that it was not relevant to a material fact at trial, and that it was inadmissible hearsay. We conclude, however, that the error was harmless considering the overwhelming evidence of Parks's guilt.[5]

3. After the jury had been selected and the trial had begun, Parks attended several bench conferences with his attorney. The trial court, however, after one of these conferences, asked Parks's attorney not to bring Parks to the bench conferences because the court was concerned about security in that Parks had a separate case pending in which he was charged with escape. Parks's attorney objected, contending that Parks had a constitutional right to be present at the bench conferences. The trial court overruled the objection, but granted Parks a continuing objection on the issue. During the remainder of the trial, numerous bench conferences were held in Parks's absence. On appeal, Parks contends that the trial court erred in its ruling. For the following reasons, we disagree.

In *Huff v. State*,[6] we addressed whether Huff's absence from a jury charge conference, as well as from a discussion that took place in chambers regarding whether Huff's custodial statement should go out with the jury during deliberations, violated his constitutional right to be present at all stages of his trial under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983. We noted that "[t]he right to be present attaches 'at any stage of a criminal proceeding that is critical to its outcome if (the defendant's) presence would contribute to the fairness of the procedure.' *Kentucky v. Stincer*, 482 U. S. 730, 745 (107 SC 2658, 96 LE2d 631) (1987)."[7] Stated somewhat differently, it has been said that the right to be present

exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to

---

[4] See *McPherson*, 274 Ga. at 450.
[5] See *Heard v. State*, 274 Ga. 196, 199-200 (552 SE2d 818) (2001).
[6] 274 Ga. 110 (549 SE2d 370) (2001).
[7] *Huff*, 274 Ga. at 111.

the extent that a fair and just hearing would be thwarted by the defendant's absence. *United States v. Gagnon*, 470 U. S. 522, 526 (105 SC 1482, 84 LE2d 486) (1985) (citing *Snyder v. Massachusetts*, 291 U. S. 97, 105-106, 108 (54 SC 330, 78 LE 674) (1934)).[8]

In *Huff*, we concluded that because the charge conference and the in-chambers conference addressed legal matters concerning which Huff could not have made a meaningful contribution, his constitutional right to be present was not violated.[9]

Our decision in *Huff* is consistent with decisions from other courts that have addressed whether a defendant's right to be present has been violated. For example, in *United States v. Boyd*,[10] the trial court held a motion for new trial hearing with the defendant's attorney present but the defendant absent. The Eleventh Circuit Court of Appeals found no violation of the defendant's right to be present because the hearing did not impact the defendant's right to cross-examine trial witnesses, because the defendant did not have any knowledge regarding the subject of the motion for new trial, and because he could not have assisted his counsel so as to have made the hearing more reliable.[11] Quoting Justice Cardozo, the Eleventh Circuit concluded that the defendant's "presence at the hearing would have been 'useless, or the benefit but a shadow,' *Snyder v. Massachusetts*, 291 U. S. 97, 108 (54 SC 330, 78 LE 674) (1934), and thus his exclusion did not violate his due process rights."[12]

Similarly, in *State v. Blakeney*,[13] the North Carolina Supreme Court addressed whether the defendant's absence from various bench conferences violated his right to be present. The court relied on several factors to conclude that the defendant's right to be present had not been violated. First, the court noted that there was nothing to suggest that the conferences implicated the defendant's confrontation rights.[14] Second, the court also concluded that the record did not show that the defendant's presence had a " 'reasonably substantial relation to his opportunity to defend.' "[15] The factors that led the court to the latter conclusion were that " 'bench conferences typically concern legal matters with which an accused is likely unfamiliar and

---

[8] *United States v. Bishwai*, 272 F3d 458, 461-462 (7th Cir. 2001).
[9] *Huff*, 274 Ga. at 112.
[10] 131 F3d 951, 954 (11th Cir. 1997).
[11] *Boyd*, 131 F3d at 954.
[12] *Boyd*, 131 F3d at 954.
[13] 531 SE2d 799, 813-814 (N.C. 2000).
[14] Id. at 813-814.
[15] Id. at 814, quoting *State v. Buchanan*, 410 SE2d 832, 845 (N.C. 1991).

incapable of rendering meaningful assistance,' "[16] and that the defendant was present in the courtroom, and observed the context of each conference, at which his attorney was present, and that the defendant and his attorney had the opportunity to communicate about the conferences.[17]

Finally, in *United States v. Moore*,[18] the Seventh Circuit Court of Appeals addressed whether a defendant's right to be present had been violated when he was absent from a bench conference that discussed a witness's right to assert his privilege against self-incrimination. Because the defendant's attorney was present during the bench conference and because the defendant's presence at the conference would not have aided the trial court in resolving the legal issue discussed at the conference, the court reasoned that the defendant's right to be present had not been violated.[19]

Turning to the present case, we note that Parks has not cited to the transcript, which consists of approximately 1,400 relevant pages, for a single bench conference from which he was excluded, nor has he made any contention regarding how his absence from any of these bench conferences violated his right to be present, as recently articulated in *Huff v. State*. Nevertheless, this Court has reviewed the entire transcript for the bench conferences in question, and the record shows that Parks was not present at bench conferences that discussed, among other things, the following: (1) whether a foundation for a hearsay question had been laid; (2) whether the prosecutor was asking a leading question; (3) how to publish a letter to the jury (whether to have the witness read it or to pass out copies to the jury); (4) the appropriate limiting instruction concerning prior difficulty evidence; (5) whether an arrest warrant could go out with the jury; (6) whether a State's witness had a criminal record; (7) whether a State's witness could testify that Parks "mouthed off" to him when he arrested Parks for a prior difficulty with the victim or whether such testimony constituted a prior statement of Parks that was inadmissible because it had not been provided to the defense during discovery; (8) whether a defense exhibit, consisting of a nolle prosequi of a simple battery charge against Parks for a prior difficulty with the victim, was inadmissible because Parks had not provided a copy to the State during discovery; (9) the scheduling of a witness's testimony; (10) the prosecutor's request for a 15-minute delay in the trial in order to wait for another witness to arrive at the courtroom; and (11) whether a police officer could testify that, after he made

---

[16] Id. at 813, quoting *State v. Buchanan*, supra.

[17] Id. at 814.

[18] 936 F3d 1508, 1523 (7th Cir. 1991).

[19] Id. at 1523.

attempts to contact Parks, Parks did not come to the police station and make a statement (the trial court sustained Parks's objection to this testimony).

Having reviewed these bench conferences carefully, we conclude that Parks's right to be present was not violated by his absence from the conferences. First, the conferences discussed legal matters about which Parks would have known very little or nothing, and no witnesses discussed their testimony at any of the conferences. Moreover, Parks's attorney was present at all of these conferences, had the opportunity to discuss each conference with Parks, and, in fact, stated that he was going to discuss the conferences with Parks. In addition, each conference occurred while Parks was in the courtroom. Thus, Parks observed each part of the trial that preceded and caused a request for a bench conference, and thus had some knowledge of the topic of each conference.

For these reasons, we conclude that there did not exist a "reasonably substantial relation" between Parks's presence and his opportunity to defend against the charges against him. Accordingly, we find no merit to this enumeration of error.

4. Parks contends that the trial court erred in failing to give his requested limiting instruction concerning evidence of Parks's prior difficulties with the victim. However, because the trial court gave a limiting instruction, both at the time the prior difficulties evidence was admitted and at the end of the trial, that substantially covered the principles of the requested charge, we find no error.[20]

5. At trial, Parks moved the trial court to prohibit a State's witness from testifying based upon the State's failure to comply with certain relevant discovery statutes concerning that witness.[21] The trial court, however, denied the motion, and on appeal, we conclude that the trial court did not abuse its discretion in doing so.[22]

6. Parks contends that the trial court erred by permitting the State to introduce evidence that he vandalized Monquita's mother's car as evidence of a prior difficulty between Parks and Monquita. More specifically, Parks contends that, as Monquita was not at her apartment when Parks vandalized her mother's car, the evidence was actually of a difficulty between Parks and the victim's mother and was thus inadmissible at Parks's trial for murdering the victim. However, because the evidence at trial showed that the incident in question occurred during a series of difficulties between Parks and the victim that spanned the course of several days, and because the

---

[20] See *Mancill v. State*, 274 Ga. 465, 467 (554 SE2d 477) (2001); *Tumlin v. State*, 274 Ga. 309, 310 (553 SE2d 592) (2001).

[21] See OCGA §§ 17-16-7 and 17-16-8.

[22] See OCGA § 17-16-6; *Malaguti v. State*, 273 Ga. 398, 401-402 (543 SE2d 1) (2001).

evidence showed that Parks smashed all the windows out of the victim's mother's car because the mother told Parks that he could not speak with the victim on the phone when he repeatedly called her house, we conclude that the incident demonstrated Parks's bent of mind toward the victim and was thus admissible as prior difficulty evidence.[23]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 10, 2002 —
RECONSIDERATION DENIED JULY 12, 2002.

*Dwight L. Thomas, Caprice R. Jenerson,* for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General,* for appellee.

---

[23] See *Wall v. State,* 269 Ga. 506, 509 (500 SE2d 904) (1998) (evidence of the defendant's prior acts is admissible to demonstrate the relationship between the victim and the defendant and to show the defendant's "motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted").