## A11A0863. LYDE v. THE STATE.

(716 SE2d 572)

BARNES, Presiding Judge.

A Glynn County jury convicted Harry Truman Lyde in March 2006 of two counts of aggravated child molestation and two counts of child molestation, and he was sentenced to a total of 30 years to serve. On appeal, Lyde contends that (1) his constitutional right to be present at his trial was violated, and that his counsel was ineffective for waiving his right to be present, and (2) the indictment against him failed to properly allege that the statute of limitation was tolled during the two victims' minority. For the reasons that follow, the trial court did not err in denying Lyde's motion for new trial on these grounds.

Lyde was accused of four molestation counts involving two victims. Three counts involved one victim, who was eighteen as of trial. She testified that she, her brother, and her mother lived with Lyde until her mother went into drug rehabilitation two years earlier and the victim went into foster care. Lyde began rubbing her between her legs and having sexual intercourse with her when she was six or seven years old and continued through her sixteenth birthday, until she made an outcry.

The fourth count of the indictment accused Lyde of committing child molestation by placing his hand on the genitals of the second victim, who testified that she was eight or ten when she spent the night with the first victim and awoke to find Lyde on top of her with his hand down her pajama bottoms, rubbing her vagina. He tried to pick her up but she began crying so he left her alone, and she never spent the night there again.

The State gave Lyde notice of its intent to produce similar transaction evidence involving five additional victims, and three of them testified that Lyde had committed acts of molestation against them when they were younger than sixteen. The first similar transaction witness testified that when she was 14 or 15, she fell asleep babysitting for Lyde's children and awoke with him on top of her, penetrating her vagina with his penis. Another time when she, her mother, and Lyde's sister stayed at Lyde's house in New York she awoke to find Lyde performing oral sex on her. The second similar transaction witness testified that when she was nine and lived with Lyde's mother, Lyde unlatched her bathroom door using a butter knife and touched her vaginal area and buttocks before she escaped

from his clutches. The third similar transaction witness testified that as a child she had lived around the corner from Lyde, who was her father's best friend. She and Lyde's children played at each other's houses, and when she was five or six Lyde put his hands between her legs and touched her inappropriately. Another time he pulled her pants down and rubbed his penis between her legs, and twice when sleeping at his house she awoke to find him on top of her, penetrating her.

1. Lyde contends that "the trial court was clearly erroneous when it failed to find that [Lyde's] trial counsel . . . render[ed] ineffective assistance by improperly waiving [Lyde's] presence at a critical stage of trial. This constitutional violation is presumed to be harmful," and thus his conviction must be reversed.

> Embodied in the constitutional right to the courts under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the right of the criminal defendant to be present . . . at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.

(Citations and punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001).

Lyde's defense at trial was that his character was good and that the victims and similar transaction witnesses had reputations for being untruthful. After the completion of the direct examination of a defense witness, the trial court excused the jury for "an afternoon recess, a good 15 minutes." After the jury left the courtroom, the following colloquy transpired:

> THE COURT: Does the state need to take something up?
>
> [THE STATE]: I do have a motion, Your Honor.
>
> THE COURT: And does [the witness] need to be on the stand for it?
>
> [THE STATE]: No, sir.
>
> THE COURT: All right. [Witness], you may stand down.
>
> [WITNESS:] Thank you, sir.
>
> (WHEREUPON, the witness leaves the witness stand and the following transpires.)
>
> THE COURT: All right.
>
> [THE STATE]: Your Honor, it's my —
>
> THE COURT: Are we waiving your client's presence?
>
> [LYDE'S TRIAL COUNSEL 1]: We will.

[LYDE'S TRIAL COUNSEL 2]: Yes.

[THE STATE]: Your Honor, it's the state's position that for some time now the defendant's character has been placed into issue by the witnesses on the stand, particularly with this last witness as to his service in Vietnam, his work in the community with children, and all the good that he does. At this time, Your Honor, we are asking the Court to make a finding that the defendant's character has been placed into issue by the defense and to allow the State to proceed accordingly.

THE COURT: All right. Gentlemen?

During the ensuing colloquy, defense counsel strenuously argued that he had not placed Lyde's character into issue with his questions. The trial court then called a ten-minute recess, and when the proceedings were back on the record the court noted that Lyde was present. Defense counsel moved to strike any portion of the defense witness's nonresponsive testimony pertaining to Lyde's good character. The trial court granted the motion to strike, then denied the State's motion for a finding that Lyde had placed his character into issue. After an unrecorded bench conference, the jury returned to the courtroom, and the trial court instructed that it had granted Lyde's motion to strike a portion of the witness's testimony "to the extent that it purported to prove the good character of the defendant." Thus, the court continued, the jury could consider the witness's testimony only "to the extent you conclude that it is probative of the issue in this case other than the character of the defendant."

Lyde argues both that his defense counsel was ineffective for waiving his right to be present during the discussion about the motions and that "this constitutional violation is presumed to be harmful error." The analysis of a right-to-be-present claim raised directly differs, however, from a right-to-be-present claim raised indirectly "under the aegis of an ineffective assistance of counsel claim." *Peterson v. State*, 284 Ga. 275, 280 (663 SE2d 164) (2008). The former requires no showing of harm, while the latter does. *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998) (harm is presumed from violation of state constitutional right to be present at all critical stages of trial); *Peterson*, 284 Ga. at 280 (defendant must show both deficient performance and resulting prejudice to establish ineffective assistance due to violation of right to be present).

In *Peterson*, our Supreme Court reviewed "the denial of the right to be present solely as an instance of professionally deficient performance by counsel in the context of an ineffective assistance of counsel claim." Id. The court limited its analysis because it "had already considered and rejected all other claims that Peterson raised

or could have raised on direct appeal" and had remanded the case specifically for the trial court to consider the ineffective assistance claims. Id. Thus, while "harmless error review is inapplicable to a pure right-to-be-present claim under the Georgia Constitution raised on direct appeal," it was applicable to a right-to-be-present claim raised indirectly under an ineffective assistance claim. Id.

Regardless of whether we analyze Lyde's error directly as a constitutional violation or indirectly through his ineffective assistance claim, however, we must consider whether the discussion between the trial court and counsel for both parties in Lyde's absence was a "critical stage" of the proceedings at which he had the right to be present, and if so, whether he waived his presence or acquiesced in his absence. *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999). We need not reach the waiver issue in this case, because the discussion between counsel and the court during the recess was not a critical stage of the trial.

> [I]n a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, . . . [but not] when presence would be useless, or the benefit but a shadow.

*Snyder v. Massachusetts*, 291 U. S. 97, 105-107 (54 SC 330, 78 LE 674) (1934). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U. S. 730, 745 (107 SC 2658, 96 LE2d 631) (1987).

As defined by the Supreme Court of Georgia, "a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." (Citation and punctuation omitted.) *Huff*, 274 Ga. at 111 (2) (no "unequivocal" right to be present during charge conference). For example, "[a] colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present." *Pennie*, 271 Ga. at 421 (2).

Our Supreme Court has held that a defendant's case was not substantially affected by his absence from bench conferences at which the judge and counsel "discussed legal matters about which [the appellant] would have known very little or nothing, and no witnesses discussed their testimony." *Parks v. State*, 275 Ga. 320, 325 (3) (565 SE2d 447) (2002). Because no "reasonably substantial

relation" existed between his presence during the conferences and his opportunity to defend against the charges being tried, the Court found no violation of the defendant's right to be present. Id. See also *Woodward v. State*, 262 Ga. App. 363, 368 (2) (585 SE2d 687) (2003). Our Supreme Court also has held that a pretrial conference, limited in scope to scheduling, was not a critical stage of the proceedings requiring defendant's presence. *Ferrell v. State*, 261 Ga. 115, 122 (12) (401 SE2d 741) (1991).

Lyde argues that he should have been present when his attorney discussed whether evidence of Lyde's good character had been introduced because he "would have explained to his counsel how important his good character defense was to his liberty and would have vigorously objected to striking this material, essential testimony." Presumably his argument is that he would have convinced his attorneys to leave in the good character evidence. Lyde testified at the hearing on his motion for new trial that he tried to ask one of his lawyers what the motion to strike was about, but his lawyer "shushed" and silenced him. Lyde argues that having his good character "professed by a powerful member of the Glynn County community, and then watch it be unlawfully ripped away from consideration of the deliberating petit jury in [Lyde's] absence was devastating to the outcome of [Lyde's] case."

Lyde does not raise an ineffective assistance claim regarding his lawyer's successful motion to strike, which counsel interposed because the prosecutor sought a ruling that would have allowed her to question the defense witnesses about Lyde's specific bad acts. During the new trial hearing, the State argued that if the court had not granted the motion to strike the good character evidence, the State would have cross-examined the witness about Lyde's bad acts, which would have included evidence of two similar transactions in addition to the three that had already been introduced.

The issue, however, is not whether trial counsel's motion to strike constituted ineffective assistance, whether Lyde understood why his lawyer moved to strike the evidence, or whether he could have convinced his lawyer to keep the testimony if he had been there. The issue is whether Lyde's absence during the discussion violated his due process right to be present during a critical stage of his trial. Lyde was present when his trial counsel made the motion on the record to strike his witness's good character evidence, and present when the trial court ruled. The only thing Lyde missed was the discussion about whether the testimony constituted good character evidence that opened the door to cross-examination about bad character evidence. As in charge conferences or bench conferences involving purely legal argument, Lyde's absence during only the discussion of the motions did not violate his due process right to be

present during critical stages of the proceedings against him. *Barrett v. State*, 275 Ga. 669, 671-672 (4) (571 SE2d 803) (2002) (no violation when judge conferred with counsel in defendant's absence before instructing jury to retire for the evening); *Parks,* 275 Ga. at 325 (3); *Huff,* 274 Ga. at 111-112 (2).

Accordingly, this enumeration is without merit.

2. Lyde argues that the indictment is fatally flawed because the State failed to plead that the statutes of limitation were tolled. The indictment was returned on November 16, 2005 and alleged that the offenses occurred "on or before December 28, 2003" for acts of aggravated child molestation or child molestation against victims under the age of 16. The applicable statute of limitation for child molestation and aggravated child molestation is either four or seven years. OCGA § 17-3-1. If a victim of child molestation was younger than 16 at the time of the act alleged, the applicable statute of limitation does not begin to run until the victim reaches the age of 16 or the violation is reported to law enforcement, whichever occurs earlier. OCGA § 17-3-2.1 (a) (5). We have held that an indictment alleging the molestation of a child "under the age of 16" sufficiently invoked the statute of limitation tolling provision set forth in OCGA § 17-3-2.1. *Tompkins v. State*, 265 Ga. App. 760, 765 (2) (c) (595 SE2d 599) (2004), rev'd in part on other grounds, *Tompkins v. State*, 278 Ga. 857 (607 SE2d 891) (2005); *Grizzard v. State*, 258 Ga. App. 124, 125-127 (2) (572 SE2d 760) (2002).

Lyde's appellate counsel, who was also appellate counsel in *Tompkins*, argues that this holding was wrong. Counsel notes that the State must allege and prove other exceptions to the bar of the statute of limitation. *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996). Every indictment that charges child molestation alleges the essential element that the victim was a child under the age of 16, Lyde argues, and in enacting the tolling statute, the legislature must have intended for the State to do more than simply charge an element necessary for the underlying crime. Otherwise, he argues, the tolling provision of OCGA § 17-3-2.1 is superfluous.

The State responds that all four counts of the 2005 indictment aver that the victim was "a child under the age of 16 years" and that the offenses occurred on or before December 2003, thus giving Lyde notice on the face of the indictment that the tolling provision of OCGA § 17-3-2.1 applied and the statute of limitation had not run. We disagree that *Tompkins* and *Grizzard* were wrongly decided, and therefore find no error.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

*Brian Steel*, for appellant.
*Jacquelyn L. Johnson, District Attorney*, for appellee.