**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**January 25, 2013**

# In the Court of Appeals of Georgia

A12A2032. SMITH v. THE STATE.                                    JE-077C

ELLINGTON, Chief Judge.

A Fulton County jury found Antoine Smith guilty of rape, OCGA § 16-6-1 (a) (1), and aggravated child molestation, OCGA § 16-6-4 (c). Smith appeals pursuant to an order granting an out-of-time appeal, contending that the evidence was insufficient to support his convictions and that the trial court committed certain errors. For the following reasons, we affirm his rape conviction, but we reverse his aggravated child molestation conviction.

1. Smith contends that the State's evidence was insufficient to support his convictions. We disagree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [Smith] no longer enjoys a presumption of innocence; moreover, an appellate court

determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Citations and footnotes omitted.) *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact." (Footnote omitted.) *Phagan v. State*, 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000).

So viewed, the record reveals the following. In July 2004, ten-year-old T. F. told an investigator with the Atlanta Police Department that her mother's boyfriend, Smith, had molested her on several occasions during that summer. T. F. testified at trial that, on one occasion, Smith approached her in the evening after he had been drinking and offered to teach her about sex. Smith instructed T. F. to put her mouth on his penis. Smith also pulled the victim's pants down and inserted his penis into the victim's anus. T. F. testified that the anal penetration hurt her and caused her to cry. Smith warned the victim to tell no one. On another occasion, Smith ordered the victim into his bed, where he had vaginal intercourse with her. He also told the victim to perform oral sex on him. T. F. testified that the intercourse was painful and caused

2

vaginal bleeding. She also testified that she did not want to have sex with Smith, but that she believed she was required to comply with his demands because he was an adult.

The victim did not make an immediate outcry because she was afraid of her mother, who had severely beaten her and tied her up in the past. But she eventually told her mother and her grandmother about the sexual abuse, and her grandmother called the police. Although a physical examination of the victim revealed no evidence of trauma to the genital or anal area, the victim tested positive for chlamydia. The victim also had old rope burns on her hands. The victim gave a statement concerning the sexual abuse to a social worker, and the social worker testified that T. F. told her that Smith had engaged her in acts of anal, oral, and vaginal sex. A psychologist, Anique Whitmore, also testified concerning the various ways victims of child sexual abuse may disclose the abuse.

(a) Pursuant to OCGA § 16-6-1 (a) (1), a person commits the offense of rape when he has "carnal knowledge" of a female "forcibly and against her will." "Carnal knowledge in rape occurs where there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). "The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical

3

bodily harm, or mental coercion, such as intimidation." (Footnote omitted.) *Jenkins v. State*, 259 Ga. App. 87, 88 (1) (576 SE2d 68) (2003).

The victim's testimony was sufficient to establish that Smith had vaginal intercourse with her. Further, the jury could infer from the victim's testimony and her young age that she did not willingly consent but was intimidated into complying with Smith's demands out of fear of punishment. Thus, viewed in a light most favorable to the verdict, this evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Smith committed the offense of rape. See id.

(b) OCGA § 16-6-4 (c) provides that a "person commits the offense of aggravated child molestation when such person commits an offense of child molestation which . . . involves an act of sodomy." Further, "[a] person commits the offense of child molestation when [he or she] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). An act of sodomy includes "any sexual act involving the sex organs of one person and the … anus of another." OCGA § 16-6-2 (a) (1).

The indictment alleged that Smith, during an act of child molestation, committed an act of sodomy by placing his penis against the victim's anus. The

4

victim, who was under the age of 16 years, testified that Smith engaged her in sexual activity and that he inserted his penis into her anus. A jury could infer that Smith's actions were intended to satisfy his sexual desires. Thus, this evidence was sufficient to support his conviction for aggravated child molestation beyond a reasonable doubt. See *Morgan v. State*, 226 Ga. App. 327, 329 (2) (486 SE2d 632) (1997) (testimony that the defendant put his penis "on [the victim's] butt" was sufficient to sustain the conviction for aggravated child molestation based upon an act of sodomy).

2. Smith contends that the trial court erred by allowing his trial counsel to introduce evidence of prior dismissed or superseded indictments for the same offense for which he was being tried. The record shows that Smith's trial counsel used the prior indictments as evidence to bolster his argument that the victim's allegations were fabricated because they had changed over time: "So why all the indictments? Because as [the victim's] story kept changing[,] the charges had to change with it." Although the court allowed the introduction of this evidence and argument based upon it, the court did not allow the indictments to be sent out with the jury during deliberations.

Because Smith's counsel chose to introduce the indictments for a strategic purpose, Smith may not now complain that the court erred in admitting it. "Generally,

a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U. S. 753, 755 (120 SC 1851, 146 LE2d 826) (2000). Moreover, "[a] criminal defendant cannot complain of an error or ruling which his own conduct procured or aided in causing." *Murray v. State*, 239 Ga. App. 861 (1) (522 SE2d 269) (1999) (defendant stipulated at trial to the admission into evidence of his two prior convictions for possession of marijuana). Consequently, we find no error.

3. Smith contends that the trial court erred in admitting evidence of prior physical abuse of the victim by the victim's mother. During the State's direct examination, the victim testified that her mother had whipped her and tied her up. The victim's mother gave similar testimony. Smith did not interpose a contemporaneous objection to this testimony; rather, he complained for the first time in his motion for new trial. As we have explained, "raising evidentiary arguments for the first time in a motion for new trial is too late and does not preserve the issue for appellate review." *Dyer v. State*, 257 Ga. App. 267, 268 (2) (570 SE2d 692) (2002). Consequently, any error concerning the admission of this evidence has been waived.

4. Smith contends that the trial court erred when it qualified Anique Whitmore as an expert witness. We disagree.

6

"Acceptance or rejection of the qualifications of a proposed expert witness is within the sound discretion of the trial judge and will not be disturbed on appeal absent manifest abuse." *Bridges v. State*, 279 Ga. 351, 354 (3) (613 SE2d 621) (2005).

> An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like. An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court.

(Footnotes omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004).

The court found Whitmore qualified as an expert "to testify in matters related to forensic interviewing and the assessment and treatment of abused children." The record shows that Whitmore has a Master's Degree in counseling psychology and is a licensed professional counselor. Whitmore was employed as a director at Harbor House, a regional child advocacy center. She had conducted over 900 forensic interviews and over 1,500 clinical assessments of abused children, and she had testified in court approximately 85 times. Given the evidence of Whitmore's education, training, and experience, we cannot say that the trial court abused its discretion in qualifying Whitmore as an expert witness. See *Miller v. State*, 273 Ga.

7

App. 761, 764 (3) (615 SE2d 843) (2005) (qualifying a witness as an expert was not an abuse of discretion as the witness had over 20 years of experience in the field of domestic violence and an educational background in psychology). Further, there is no evidence that Whitmore gave any testimony beyond the scope of her expertise.

5. Smith contends that there was a fatal variance between the indicted offense of aggravated child molestation and the court's charge to the jury concerning that offense and, as a result, his conviction on that count must be reversed. We agree.

Count two of the indictment charged Smith with aggravated child molestation by committing an act of sodomy, specifically, the act of placing his penis "into and upon" the victim's anus. In its charge to the jury,[1] the trial court defined aggravated child molestation as an act of child molestation which involves sodomy or which physically injures the child, as set forth in OCGA § 16-6-4 (c).[2]

_____

[1] The court charged the jury as follows:
A person commits the offense of aggravated child molestation when that person does an immoral or indecent act to or in the presence of or with a child less than 16 years of age, with the intent to arouse or satisfy the sexual desires of either the child or the person and the act physically injures the child or involves the act of sodomy.

[2] OCGA § 16-6-4 (c) provides: "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."

8

Generally, inapplicable portions of a charged Code section are unnecessary and not harmful. *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909) (1996). However,

> [a] criminal defendant's right to due process may be endangered when, as here, an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.

(Citations and punctuation omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999). Upon reviewing the charge as a whole, we note that the jury was not instructed to limit its consideration to the commission of the crime as alleged in the indictment. See *Dukes v. State*, 265 Ga. 422, 424 (457 SE2d 556) (1995) ("[w]ithout a limiting instruction[,] . . . the jury charge on unlawful appropriation violated due process"). Given the evidence in this case, we conclude that there was a reasonable possibility that the jury convicted Smith of committing the crime of

aggravated child molestation in a manner not alleged in the indictment. There was some evidence adduced that the victim was physically injured as a result of sexual intercourse with Smith. The victim testified that intercourse caused her pain and subsequent bleeding, evidence from which the jury could conclude that the victim was physically injured.[3] See *Perguson v. State*, 221 Ga. App. at 214-215 (1) ("Given the court's charge, the evidence presented, and the absence of a limiting charge, the jury could well have believed that [the defendant] committed aggravated child molestation by committing an act of child molestation that physically injured the victim."). Consequently, Smith's conviction for aggravated child molestation must be reversed.[4]

---

[3] Though these facts were arguably the ones used to prove the rape conviction, the jury also could have believed that they supported the offense of aggravated child molestation. Thus, the jury could have found Smith guilty of aggravated child molestation as alleged in the indictment based upon these facts even if the jury did not believe that Smith had anally sodomized the victim.

[4] The State may retry Smith, if it so chooses, because the State's evidence was sufficient to support his conviction for aggravated child molestation beyond a reasonable doubt, as we held in Division 1 (b), supra. See *Osborne v. State*, 166 Ga. App. 439, 440 (304 SE2d 416) (1983) ("Once a reviewing court reverses a conviction solely for insufficiency of the evidence to sustain the verdict of guilty, double jeopardy bars retrial; however, where a defendant obtains a reversal based upon 'trial error,' double jeopardy does not bar retrial." (citation omitted).

6. Smith contends that the trial court denied him his constitutional right to be present at trial because, although he was present in the courtroom, the judge did not include him in off-the-record, side-bar conferences with counsel. We disagree.

> Embodied in the constitutional right to the courts under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the right of the criminal defendant to be present . . . at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.

(Citations and punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). Stated differently,

> [i]n a prosecution for a felony[,] the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, but not when presence would be useless, or the benefit but a shadow.

(Citations and punctuation omitted.) *Lyde v. State*, 311 Ga. App. 512, 515 (1) (716 SE2d 572) (2011). "Our Supreme Court has held that a defendant's case was not substantially affected by his absence from bench conferences at which the judge and counsel discussed legal matters about which the appellant would have known very

11

little or nothing, and no witnesses discussed their testimony." (Citations and punctuation omitted.) Id.

In this case, the record shows that several bench conferences occurred, and it appears that the court and counsel discussed either housekeeping matters or the merits of evidentiary objections. The objections and the court's rulings on those objections were made in the defendant's presence and are preserved in the trial transcript. There is no evidence in the record suggesting that Smith's presence at the bench during either housekeeping or legal discussions was necessary to defend against the charges, that his presence would have been useful to the resolution of any matter before the court, or that his absence from the sidebar conferences in any way affected the fairness of the trial procedure or caused Smith to lose or waive any right or defense. Therefore, Smith's absence during these sidebar discussions did not violate his due process right to be present during critical stages of the proceedings against him. See *Lyde v. State*, 311 Ga. App. at 516-517. (An untranscribed bench conference between the trial court and counsel over whether defendant's character had been placed in issue by a line of questioning was not a critical stage of the proceeding at which defendant had the right to be present.); see also *Barrett v. State*, 275 Ga. 669, 671-672 (4) (571 SE2d 803) (2002) (there was no violation of the defendant's right to be

12

present when the judge conferred with counsel in the defendant's absence before instructing the jury to retire for the evening).

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur.*