**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 16, 2019**

# In the Court of Appeals of Georgia

A19A0813. LEEKOMON v. THE STATE.

MERCIER, Judge.

Following a jury trial, Mongkhon Leekomon was convicted of aggravated child molestation and child molestation.[1] The trial court denied Leekomon's motion for new trial, and he appeals, alleging that he received ineffective assistance of counsel at trial. He also claims that the trial court erred in charging the jury and improperly admitted evidence regarding his jailhouse telephone conversations. Finding no reversible error, we affirm.

---

[1] The jury also found Leekomon guilty of incest, and he was initially convicted of that offense. The trial court, however, vacated the verdict and sentence entered on the incest conviction after the State agreed that the evidence as to incest was insufficient.

Viewed favorably to the jury's verdict, the evidence shows that Leekomon is the uncle of T. N., who was born on January 24, 1995. On numerous occasions beginning when T. N. was four years old, Leekomon touched her breasts, vagina, and buttocks with his hand. The conduct escalated as T. N. grew older, with Leekomon placing his mouth on her vagina during the incidents. The acts continued until T. N. was approximately 15 years old.

T. N. did not disclose the abuse to anyone until 2013, when she confided in her college boyfriend. The following year, she informed her therapist about the molestation, and she told her mother in November 2014. On January 5, 2015, T. N.'s mother took her to the police station, where T. N. reported Leekomon's conduct to the authorities.

1. Leekomon argues that he received ineffective assistance of counsel at trial. To prevail on this claim, Leekomon "must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance." *Lupoe v. State*, 300 Ga. 233, 239 (2) (794 SE2d 67) (2016) (citations omitted). A defendant establishes deficient performance by demonstrating that counsel "performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." Id. at 240 (2)

(citations omitted). Prejudice is show when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation and punctuation omitted). In examining Leekomon's claim, we need not "address both components of the inquiry if [Leekomon] makes an insufficient showing on one." Id. (citation omitted).

(a) Leekomon first claims that trial counsel should have moved to dismiss the indictment filed against him on statute of limitation grounds. We disagree.

On January 6, 2016, the State charged Leekomon via indictment with aggravated child molestation and child molestation. As to both offenses, the indictment alleged that he committed the criminal acts against T. N., "a child under the age of sixteen (16) years," between August 1, 1998, and December 31, 2007. The indictment further alleged that these offenses were not "known to law enforcement until January 05, 2015."

Generally, "prosecution for felonies committed against victims who are at the time of the commission of the offense under the age of 18 years shall be commenced within seven years after the commission of the crime." OCGA § 17-3-1 (c). A statutory tolling provision, however, extends the limitation period for certain offenses, including aggravated child molestation and child molestation, committed

3

between July 1, 1992, and June 30, 2012. See OCGA § 17-3-2.1 (a). Pursuant to this statute:

> if the victim . . . is under 16 years of age on the date of the violation, the applicable period within which a prosecution shall be commenced . . . shall not begin to run until the victim has reached the age of 16 or the violation is reported to a law enforcement agency, prosecuting attorney, or other governmental agency, whichever occurs earlier.

Id.

At the hearing on Leekomon's motion for new trial, trial counsel testified that he reviewed the relevant law regarding the statute of limitation and determined that, given the statutory tolling provision, he had no "valid basis to file a plea in bar or a motion to dismiss the indictment" on that ground. This determination was correct. Although the indictment was filed more than seven years after the crimes were committed, T. N. turned 16 years of age on January 24, 2011, and she first reported the crimes to police on January 5, 2015. Trial counsel properly concluded that the January 6, 2016 indictment, filed within seven years of both T. N.'s sixteenth birthday and the date she reported the crimes to police, was timely. See OCGA § 17-3-2.1 (a).

Leekomon also argues that the indictment did not sufficiently inform him that the State intended use OCGA § 17-3-2.1 (a) to bring the offenses within the statute

4

of limitation. It is true that when an indictment relies upon an exception to the statute of limitation, the State must allege and prove that the exception applies. See *State v. Godfrey*, 309 Ga. App. 234, 238 (2) (709 SE2d 572) (2011). As we have explained, however, "an indictment alleging the molestation of a child 'under the age of 16' sufficiently invoke[s] the statute of limitation tolling provision set forth in OCGA § 17-3-2.1." *Lyde v. State*, 311 Ga. App. 512, 517 (2) (716 SE2d 572) (2011) (citations omitted). See also *Godfrey*, supra ("[A]n allegation that the victim was under the age of 16 is sufficient to satisfy [the] requirement" that the State allege and prove that OCGA § 17-3-2.1 (a) applies) (citation omitted).

Because the aggravated child molestation and child molestation counts asserted that T. N. was under the age of 16 at the time the crimes were committed, the indictment sufficiently placed Leekomon on notice that the State was relying on OCGA § 17-3-2.1 (a). See *Lyde*, supra; *Godfrey*, supra at 238-239 (2). Trial counsel's failure to file a motion to dismiss or plea in bar on this ground, therefore, was not a deficiency. See *Hantz v. State*, 337 Ga. App. 675, 678 (788 SE2d 567) (2016) ("Trial counsel's failure to file a meritless motion does not amount to ineffective assistance.") (punctuation and citation omitted).

(b) Leekomon also claims that he is entitled to a new trial because counsel failed to object to the trial court's jury charge regarding the statute of limitation. With respect to the limitation period and the applicable tolling provision, the trial court instructed the jury:

> The accused is on trial for the offense of aggravated child molestation [and] child molestation . . . . Under Georgia law, prosecution for these offenses must begin within seven years after the offense has been committed or within seven years of when the offense became known to law enforcement officers. If you find from the evidence that the indictment or accusation in this case was not filed within seven years after the offense was committed or seven years of when the offense became known to law enforcement officers, it would be your duty to acquit this Defendant as to that offense.

The court's charge failed to inform the jury that, under OCGA § 17-3-2.1 (a), the statute of limitation commences on one of two dates: when the violation is reported to specified authorities *or* the day the victim turns 16, "whichever occurs earlier." Although the court instructed jurors to consider the date the offense became known to law enforcement, it did not tell them that the victim's sixteenth birthday was a potentially relevant date for statute of limitation purposes. Trial counsel raised no objection to the inaccurate charge.

6

Leekomon argues that counsel's performance in this regard was deficient. The State, however, indicted Leekomon within seven years of both T. N.'s sixteenth birthday *and* her outcry to police. Regardless of which of these two dates the jury used to calculate the statute of limitation under OCGA § 17-3-2.1 (a), the indictment was timely. Accordingly, even if a complete charge on OCGA § 17-3-2.1 (a) had been given, "there is no reasonable probability that the outcome of the trial would have differed[.]" See *Shaw v. State*, 292 Ga. 871, 877 (3) (c) (742 SE2d 707) (2013). Leekomon, therefore, cannot show the prejudice necessary to support his ineffective assistance claim. See id.; *Hernandez-Garcia v. State*, 322 Ga. App. 455, 464 (4) (b) (745 SE2d 706) (2013) (trial counsel's failure to object to jury instruction did not prejudice defendant where "there is no reasonable possibility that the charge affected the outcome at trial").

2. In a related argument, Leekomon asserts that the trial court's jury instruction on the statute of limitation constituted plain error, requiring reversal despite counsel's failure to object. See OCGA § 17-8-58 (b) (failure to raise specific objection to jury instructions precludes appellate review "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties"). But to show plain error, Leekomon "must establish not only that the jury instruction was

7

erroneous, but also that . . . it likely affected the outcome of the proceedings." *Parker v. State*, 305 Ga. 136, 139 (3) (823 SE2d 313) (2019) (citation and punctuation omitted). And as discussed in Division 1 (b), Leekomon cannot demonstrate that the inaccuracy in the trial court's statute of limitation charge impacted the jury's verdict. It follows that no plain error occurred. See id. at 140 (4) n. 8 ("[T]he test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions.") (citation and punctuation omitted).

3. While in the Gwinnett County jail following his arrest, Leekomon made several telephone calls to his wife, which were intercepted and recorded by jail authorities. Leekomon moved in limine to exclude evidence of these conversations, asserting that the conversations were illegally recorded. The trial court denied the motion and admitted the evidence. Leekomon enumerates this ruling as error.

During a hearing on the motion in limine, defense counsel presented testimony from the commander in charge of jail administration, who indicated that when an individual is booked into the Gwinnett County jail, "there is a document that is given to the arrestee explaining the phone call, however the recordings are done, and the

8

policy how to set up the recordings." The evidence shows that Leekomon received and signed a copy of this document,[2] which states:

> The Gwinnett County Sheriff's Department reserves the authority to monitor and record all telephone conversations within this facility. Your use of the facility telephones constitutes consent to this monitoring and recording.

Georgia law prohibits any person from intentionally and secretly intercepting a telephone call. See OCGA § 16-11-62 (4). This restriction, however, does not apply "where one of the parties to the communication has given prior consent." *Boykins-White v. State*, 305 Ga. App. 827, 833 (5) (b) (701 SE2d 221) (2010) (footnote omitted); see also OCGA § 16-11-66 (a). "Such consent can be either express or implied." See *Boykins-White*, supra. And generally, implied consent to the monitoring and recording of a jail inmate's telephone calls may be demonstrated by evidence that the inmate was warned that calls might be monitored and informed that use of the facility telephone constitutes consent. See *Smith v. State*, 254 Ga. App. 107, 109 (2) (a) (561 SE2d 232) (2002).

---

[2] Defense counsel conceded at the hearing on the motion in limine that Leekomon "signed his name" and "signed that document."

9

Although the document signed by Leekomon contains such a warning, he argues that it cannot establish any consent here because he is a native of Thailand, does not speak English, and required a Thai interpreter at trial. According to Leekomon, the warning, which is written in English, was insufficient for him. . The jail commander testified, however, that during booking, arrestees who speak a foreign language for which the jail does not have a live translator – such as Thai – are given an interpreter over the telephone via a "Language Line." The interpreter translates for the arrestee during the booking process, which includes translation of the document containing the recorded telephone call warning.

The commander noted that the officer who booked Leekomon into the jail could not specifically recall whether the warning was translated for Leekomon because "[s]he's probably booked in two thousand, three thousand people since then." But he testified that use of the Language Line or a live interpreter is "our policy," and jail records showed that Leekomon "was booked in at the same time that [the warning] form was signed." Under these circumstances, the trial court was authorized to find that Leekomon was informed about and consented to the recording of his telephone calls, and that the recordings were therefore admissible. See *Ramsey v. State*, 165 Ga. App. 854, 857 (3) (303 SE2d 32) (1983) ("Unless clearly erroneous,

10

a trial court's findings as to factual determinations and credibility relating to admissibility will be upheld on appeal.") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*